# United States Court of Appeals
## For the First Circuit

No. 16-1451

UNITED STATES OF AMERICA,

Appellee,

v.

KEVIN JOSEPH FIELDS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Landya B. McCafferty, U.S. District Judge]

Before

Lynch, Selya and Kayatta,
Circuit Judges.

Claudia Leis Bolgen and Bolgen & Bolgen on brief for appellant.
Emily Gray Rice, United States Attorney, and Seth R. Aframe, Assistant United States Attorney, on brief for appellee.

May 26, 2017

**SELYA**, **Circuit Judge**. Defendant-appellant Kevin Joseph Fields stole more than $30,000 worth of postage stamps by passing bad checks at various post offices. This stamp-stealing scheme proved ill-conceived and, following his conviction, the appellant was sentenced to a 30-month term of immurement. He now appeals his upwardly variant sentence. Discerning no error, we affirm.

## I. BACKGROUND

Because this appeal follows a guilty plea, "we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing." United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).

In June of 2014, the United States Postal Inspection Service began investigating reports that an individual was using bad checks to purchase stamps at a number of post offices in New Hampshire and Maine. A copy of one of the checks, written on an account at the Kennebunk Savings Bank, displayed the name and address of the appellant. The inspectors requested information about this account from the bank. It supplied the requested information and also disclosed that it had contacted the local sheriff's department about the account. That contact was inspired when — a few weeks earlier — the appellant made two deposits into the account using counterfeit checks (each in an amount in excess of $3000).

Warming to the chase, postal inspectors located the appellant in Dover, New Hampshire. They advised him of his Miranda rights, see Miranda v. Arizona, 384 U.S. 436, 478-79 (1966), which he waived. The appellant admitted to opening the checking account and using checks furnished by the bank to purchase stamps despite his knowledge that the account did not contain sufficient funds. He estimated that he had purchased nearly $27,000 worth of stamps using bad checks, explained that "[m]oney drives me," and related that he had taken the stamps to pawn shops and exchanged them either for cash or for merchandise. He added that he had created fake checks on his computer (though he had not purchased stamps with those home-made checks).

Following a review of post office and bank records, inspectors concluded that, during the period from June 9 through June 17, 2014, the appellant had obtained more than $30,000 worth of stamps by passing bad checks at post offices in New Hampshire, Maine, and Massachusetts. In due course, a federal grand jury sitting in the District of New Hampshire returned an indictment charging the appellant with possessing stolen government property (the stamps) with intent to convert that property. See 18 U.S.C. § 641. A summons and, later, an arrest warrant were issued but never served.

We fast-forward to May of 2015, at which time the appellant wound up in state custody for an unrelated parole

- 3 -

violation. He was brought before a federal magistrate pursuant to a writ of habeas corpus ad prosequendum and subsequently entered a guilty plea to the charge of possession of stolen government property with intent to convert. The district court allowed a change of counsel at the appellant's request and, some months later, held a sentencing hearing.

The probation department submitted the PSI Report, which recommended a base offense level of six, see USSG §2B1.1(a)(2); a four-level enhancement premised on the amount of loss, see id. §2B1.1(b)(1)(C); and a two-level enhancement on the basis that the offense of conviction involved the possession or use of device-making equipment, see id. §2B1.1(b)(11)(A)(i). After subtracting two levels for acceptance of responsibility, see id. §3E1.1(a), the PSI Report recommended a total offense level of ten. The appellant's past convictions — including convictions for identity fraud, forgery, larceny, and the fraudulent use of credit cards — produced a criminal history score of 30, which the PSI Report augmented by two points because the appellant had committed the offense of conviction while on parole for unrelated state charges. See id. §4A1.1(d). These computations placed the appellant squarely in criminal history category VI.

At sentencing, the district court adopted most of the guideline calculations limned in the PSI Report. The appellant objected, however, to the two-level enhancement for his alleged

- 4 -

possession or use of device-making equipment.  Though he had manufactured counterfeit checks, he had not employed them in his stamp-stealing scheme.  The district court sustained this objection and reduced the appellant's total offense level accordingly.  This adjustment in the appellant's offense level, coupled with his placement in criminal history category VI, yielded a guideline sentencing range of 18 to 24 months (as opposed to the 24- to 30-month range suggested in the PSI Report).

The court proceeded to impose an above-the-range sentence of 30 months' imprisonment.  In pronouncing sentence, the court emphasized the appellant's extensive criminal history and fretted that the appellant would not be deterred from future criminal conduct because earlier prison terms had failed to ameliorate his behavior.  Thus, a relatively stiff sentence was needed to protect the public and to promote general deterrence. This timely appeal ensued.

## II. ANALYSIS

As a general matter, we review the imposition of a sentence for abuse of discretion.  See Gall v. United States, 552 U.S. 38, 51 (2007); United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008).  Within this rubric, though, some specific parameters pertain.  "[S]entencing claims are addressed under a two-step pavane. First, we address those claims that affect the procedural integrity of the sentence.  Second, we address any residual

question as to the substantive reasonableness of the sentence." United States v. Rodríguez-Adorno, 852 F.3d 168, 175 (1st Cir. 2017) (citations omitted). Our review "is characterized by a frank recognition of the substantial discretion vested in a sentencing court." United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013).

Consistent with our bifurcated process, we first address the appellant's assignments of procedural error. Specifically, he claims that the sentencing court relied on clearly erroneous facts and, moreover, failed adequately to explain its reasons for imposing an upwardly variant sentence.

We start with the appellant's claim that the sentencing court relied on clearly erroneous facts. In approaching this claim, we pause to recognize that the abuse of discretion standard is not monolithic. Within it, we review findings of fact for clear error and embedded questions of law de novo.[1] See United States v. Carrasco-de-Jesús, 589 F.3d 22, 26-27 (1st Cir. 2009). Clear error review is respectful and requires that we accept findings of fact and inferences drawn therefrom unless, "on the whole of the

_____

[1] Of course, unpreserved claims of sentencing error are normally reviewed for plain error. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). Here, the parties dispute whether any or all of the appellant's procedural claims of sentencing error were preserved below. We need not resolve this dispute: we assume instead, favorably to the appellant, that the ordinary standard of review for preserved claims of error applies. Even so, the appellant's procedural claims still fail.

record, we form a strong, unyielding belief that a mistake has been made." United States v. Demers, 842 F.3d 8, 12 (1st Cir. 2016) (quoting Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990)).

The appellant's complaint about the court's use of clearly erroneous facts is really two separate claims. We take these claims one by one, beginning with the appellant's contention that the district court clearly erred in refusing to find that the appellant's criminal conduct was attributable to his substance abuse. After setting the stage, we explain why we reject this claim.

At the disposition hearing, the appellant asked for leniency on account of his lengthy struggle with substance abuse. In support, his counsel sought to attribute the appellant's stamp-stealing spree to the fact that he was in the thrall of drugs. The lawyer noted that the appellant's most recent arrest involved the possession of heroin. Furthermore, in his presentence interview, the appellant had explained that "he did whatever he had to do to support his habit." And on appeal, counsel called our attention to the PSI Report's suggestion that the appellant was using heroin daily at the time of the offense of conviction.

We recognize that drug abuse is at the root of many crimes. To some extent, addiction may play a role in virtually everything that an addict does or does not do. This does not mean,

however, that every crime committed by a person with a drug habit can automatically be written off as a by-product of that habit.

In this instance, the district court was fully aware of the appellant's protracted involvement with drugs. It nonetheless rejected the appellant's plea and found that "his crimes [did] not appear to be related to drug abuse." The court implied instead that the appellant was motivated by greed.

In reaching this conclusion, the court mentioned the absence of any evidence that the appellant, when writing the bad checks, purchasing the stamps, or swapping the stamps at the pawn shop, was either under the influence of any controlled substances or in possession of such substances. Stressing that the appellant's crime was "premeditated," the court concluded that he appeared to "enjoy[] the process of deceiving . . . the bank, the United States Post Office, [and] the pawnshop." The court stated that, although it would recommend substance abuse treatment given the appellant's history, it did not believe that any such treatment would help to allay the appellant's larcenous inclinations.

The circumstances surrounding the offense of conviction lend credence to the district court's view. The appellant's explanation as to why he had embarked on his stamp-stealing spree ("[m]oney drives me"), given during his post-Miranda interview, was consistent with a finding that greed was the impetus for his

actions. The appellant did not claim, for example, that he had intended to sell or trade the purloined stamps to obtain drugs.[2]

At any rate, the standard of review is determinative here. The district court had the opportunity to see and hear the appellant, and its on-the-spot judgment is entitled to considerable weight. See United States v. Matos, 328 F.3d 34, 40 (1st Cir. 2003). Though a different finding may have been supportable in view of the appellant's history of drug abuse, the district court was not required to interpret the record in the manner that the appellant urged. See Rivera-Rivera v. United States, 844 F.3d 367, 373 (1st Cir. 2016). We have said before, and today reaffirm, that "where there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous." United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990). We therefore uphold the district court's determination that the appellant's offensive conduct was not attributable to his drug habit.[3]

---

[2] In point of fact, the appellant exchanged at least some of the stolen stamps for pawn shop merchandise rather than cash. A number of these items were found in his home, including an iPad and a laptop — and nothing in the record indicates that he was planning to sell or swap these devices for controlled substances.

[3] At the same time, we note that, had the district court agreed with the appellant and found that his criminality was driven by his addiction, his sentence may well have been the same. How much weight to afford such a conclusion would have been subject to the court's discretion. See United States v. Bermúdez-Meléndez, 827 F.3d 160, 165 (1st Cir. 2016).

The appellant's other claim about the sentencing court's supposed reliance on a clearly erroneous fact fails for a different reason.  Simply put, there is less to this claim than meets the eye.

The appellant asserts that the court became confused and found (incorrectly) that his offensive conduct involved identity fraud.[4]  This assertion has two parts.  First, it presumes that the appellant did not engage in identity fraud as part of the offense of conviction.  Second, it presumes that the court misconstrued the appellant's crime and thought that it involved identity fraud.  Only one of these presumptions is true.

We agree with the appellant that the record is barren of any evidence that his stamp-stealing scheme included identity fraud.  For instance, there is no evidence that he opened the checking account using a false identity, or that the checks he submitted to the various post offices bore any name other than his own, or that he gave a pseudonym to the pawn shops when unloading the stamps.

The appellant's claim runs aground, though, on the second part of his hypothesis: the record makes pellucid that the

---

[4] Both in the colloquy in the district court and in their briefs, the parties refer variously to "identity fraud," "identity theft," "credit card fraud," and the like.  Whatever the precise phrase, the point is the same.  So for simplicity's sake, we refer throughout (except where direct quotations are involved) to "identity fraud."

district court made no finding that the offensive conduct involved identity fraud.  While the court did comment about identity fraud, the appellant's plaint yanks the court's comments from their contextual moorings.  We explain briefly.

In the critical portion of its remarks at sentencing, the court discussed the weight to be given to the appellant's criminal record — a record that it characterized as "horrendous."  The court expressed particular concern about the appellant's historical record of fraud and theft crimes, including state-court convictions for forgery, fraudulent use of credit cards, and identity fraud.  The court's passing reference to the importance of protecting the victims of identity fraud was made in the course of concluding that, although the appellant's past crimes were not violent, they nonetheless signified a significant threat to the public and warranted substantial weight in the sentencing calculus.[5]  This was an entirely appropriate factor for the court to consider at sentencing.  See 18 U.S.C. § 3553(a)(1); see also Flores-Machicote, 706 F.3d at 21.  We discern no error, clear or otherwise.

---

[5] In particular, the court stated that "victims of credit card fraud," though not subjected to violence, certainly experience "a violation" and face difficulty when they "try to clear their record[s]" and "clear their name[s]."

The appellant has one more shot in his procedural-error sling. He alleges that the district court failed adequately to explain its reasons for imposing an upwardly variant sentence.

It is common ground that a sentencing court must "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). Beyond that, the court is obligated to complete "a statement of reasons form." Id. § 3553(c)(2); see 28 U.S.C. § 994(w)(1)(B). Even so, the court's failure to complete this form does not require vacation of the sentence absent a showing of prejudice. See United States v. Vázquez-Martínez, 812 F.3d 18, 25-26 (1st Cir. 2016). We will not set aside a sentence on such a ground if, after reviewing "the district court's oral explanation, we believe that the district court would have imposed the same sentence had it filed a written statement of reasons form." Id. at 25.

We are mindful that the challenged sentence represents an upward variance, exceeding the top of the applicable guideline range by six months. A sentencing court's obligation to explain its reasons for the sentence imposed is heightened in proportion to the extent that the sentence varies from the guideline sentencing range. See United States v. Montero-Montero, 817 F.3d 35, 37 (1st Cir. 2016). Larger variances require more cogent (or, at least, more detailed) explanations. See id.

In the case at hand, the appellant asseverates that the district court did not furnish an adequate explanation for his above-the-range sentence. The court did file a written statement of reasons form, but the appellant argues that the court did not sufficiently address that form's component parts. Specifically, the appellant points out that the court did not complete section VI(D) of the form, which directs that the court "[s]tate the basis for a variance." This asseveration is true as far as it goes, but it does not take the appellant very far.

Despite the omission on which the appellant relies, the court did complete section VI(C) of the form, entitled "18 U.S.C. § 3553(a) and other reason(s) for a variance." This section presents a checklist of the section 3553(a) factors and provides blank lines for the court to insert more particularized comments. The court checked several boxes listing pertinent statutory factors, and it specified (in the space allotted) that the nature of the offense — a "[p]lanned, premeditated fraud" — together with the appellant's "[e]xtensive" criminal history warranted the upwardly variant sentence. Given that the court did supply its reasons for the variance, we are not convinced that its failure to complete section VI(D) was error.

Even assuming, for argument's sake, that the failure to fill out section VI(D) was error, any such error was harmless. See United States v. Fernández-Garay, 788 F.3d 1, 5 (1st Cir. 2015)

("[A]n error is deemed harmless if a reviewing court can say with fair assurance that the sentencing court 'would have imposed the same sentence even without the error.'" (quoting United States v. Tavares, 705 F.3d 4, 25 (1st Cir. 2013)). What the court wrote in responding to other sections of the form, combined with what it said at the disposition hearing, leaves no doubt that the district court would have imposed the same sentence had it filed a fully completed statement of reasons form.

The appellant demurs. He suggests that having the district court complete the form in full would have made a difference in his sentence. In his view, the district court was "subconsciously" influenced by the proposed two-level enhancement for the possession or use of device-making equipment, see USSG §2B1.1(b)(11)(A)(i), even though the court sustained the appellant's objection to this proposed enhancement. Had the court written out the basis for the variance, the appellant says, it "may have noted the eerie similarity between the variant sentence handed down and the top of the Guideline Sentencing Range [including] the disallowed two-level enhancement."

This argument, though creative, is woven entirely out of tattered threads of speculation and surmise. Nothing in the record so much as hints that the court confused the two guideline sentencing ranges and thought it was imposing a top-of-the-range sentence. Nor does the record indicate that once the court had

- 14 -

rejected the proposed enhancement, it nonetheless continued to take it into account.

The appellant makes one last effort to pull a rabbit out of a hat. The sentencing court's oral reasoning makes transparently clear that the driving force behind the upward variance was the combination of the appellant's prolific criminal history and the gravity of the offense of conviction. The appellant strives to transmogrify the clarity of this explanation into a fatal flaw. He posits that the sentencing guidelines already accounted for these factors and, thus, the court needed to explain why the guidelines insufficiently accounted for them before imposing an above-the-range sentence. See United States v. Zapete-Garcia, 447 F.3d 57, 60 (1st Cir. 2006) (explaining that when a sentencing court relies on a factor already accounted for by the sentencing guidelines to impose a variant sentence, the court must indicate what makes that factor worthy of extra weight in the defendant's case); see also United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014).

The appellant's argument collapses because the court did exactly what the case law requires. The court noted that both the appellant's past convictions and the offense conduct were non-violent and stated "that's why the guideline range on this . . . is light." It then explained that, notwithstanding their non-violent nature, the appellant's crimes were serious and

- 15 -

emphasized the hardship that fraud of the type perpetrated by the appellant in past cases imposes on its victims. Similarly, the court was "very concerned" about protecting the public from the appellant's "serial nonstop criminal conduct" and worried that the appellant would resume his criminal behavior "the minute he gets out." No more detailed explanation was exigible: "a sentencing court's obligation to explain a variance requires the court to offer a plausible and coherent rationale — but it does not require the court to be precise to the point of pedantry." Del Valle-Rodríguez, 761 F.3d at 177.

This brings us to the appellant's challenge to the substantive reasonableness of his sentence. The government concedes that the appellant preserved this objection below and, thus, our review is for abuse of discretion. See United States v. Medina-Villegas, 700 F.3d 580, 583 (1st Cir. 2012).

"In appraising the substantive reasonableness of a sentence, we first ask whether the district court has offered a plausible rationale for the sentence and then ask whether the sentence embodies a defensible result." United States v. Díaz-Arroyo, 797 F.3d 125, 129 (1st Cir.), cert. denied, 136 S. Ct. 272 (2015). We must affirm the sentence if it is "within the universe of acceptable outcomes." United States v. Vargas-Dávila, 649 F.3d 129, 132 (1st Cir. 2011). This remains true even if reasonable

jurists could disagree on the length of the ideal sentence.  See id.

This standard is "highly deferential" to the district court's judgment, even when that court has imposed a variant sentence.  United States v. Matos-de-Jesús, ___ F.3d ___, ___ (1st Cir. 2017) [No. 16-1695, slip op. at 10].  Here, moreover, the court below provided a surfeit of reasons in support of the sentence imposed.

As we already have discussed, the appellant came before the court with a lengthy criminal history — one that convinced the court that the appellant presented a very high risk of recidivism.  In addition, the court was troubled by the fact that the appellant's criminal conduct seemed to be increasing in severity, as his current offense was "a planned, premeditated scheme" of "deceit and fraud" that "lasted over many weeks" as opposed to a crime of opportunity.  This escalation reflected a change of course (in the wrong direction) from the appellant's earlier convictions for, say, stealing wallets.

To be sure, the court recognized that there were two sides to the story.  For example, it found the appellant's personal circumstances mitigating.  He had been raised by a supportive foster family from the age of four, but his upbringing was marred by behavioral and mental health issues.  The court considered the appellant's psychological infirmities — anxiety, depression, post-

traumatic stress disorder, and polysubstance dependence — to weigh in mitigation. The court told the appellant that it had "taken into consideration everything I've heard" and "come down from where I really thought you should be based on my reading of your criminal record."

The sentencing court's comments, read as a whole, paint a clear picture of the court's thought process. We consider its carefully balanced rationale to be thoroughly plausible.

So, too, we take no issue with the resulting sentence. The duration of the sentence is readily defensible: the appellant's criminal history is substantial, the offense of conviction is serious, and the appellant's past encounters with the legal system have not altered his behavior. Seen in this light, the 30-month sentence falls well within the universe of reasonable sentences. See Vargas-Dávila, 649 F.3d at 132. Accordingly, the appellant's claim of substantive unreasonableness fails.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the sentence is

**Affirmed.**