**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 16-1206

UNITED STATES OF AMERICA,

Appellee,

v.

RUBÉN LUGO-CARTAGENA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella, Thompson, and Barron,
Circuit Judges.

Antonio L. Bisbal-Bultrón, on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, Senior Appellate Counsel, on brief for appellee.

July 18, 2017

**THOMPSON**, **Circuit Judge**.  Appellant Rubén Lugo-Cartagena ("Lugo") pled guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  On appeal, Lugo challenges his above-Guidelines, 48-month sentence as unreasonable.  Finding no error, we affirm.

## BACKGROUND[1]

### A. Investigation

The investigation that eventually resulted in Lugo's arrest began on June 17, 2015, when narcotics agents with the Puerto Rico Police Department ("PRPD") conducted surveillance outside of Lugo's home.  The observations made during surveillance allowed the officers to obtain a search warrant, which was executed on June 25, 2015.[2]

As officers approached Lugo's home on that date, they observed Roger Torres Quiñones ("Roger") and Jose M. Quiñones

---

[1] Because this appeal follows a guilty plea, "we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing." United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).

[2] The details of the surveillance that resulted in the issuance of the search warrant are not provided in the record. The only description provided comes from the government's sentencing memorandum, which stated that officers observed individuals coming out of Lugo's home and selling what appeared to be illegal drugs to other individuals approaching the home.  PRPD officer Luis Santiago submitted a sworn statement indicating that the officers observed Lugo inside of his home at all times when the surveilled drug transactions occurred.

("Jose") -- Lugo's co-defendants in this case -- exchange what appeared to be illegal drugs. Jose attempted to flee from the residence by foot and after a brief chase, officers caught him and retrieved a fanny pack, which he had attempted to discard, that contained an automatic Glock pistol, magazines, ammunition, and 34 bags of heroin. Roger, presumably still at Lugo's house, was taken into custody.

The officers then proceeded into Lugo's home to execute the search warrant as initially planned and found Lugo in his living room. During the search, officers found $1,931 in Lugo's bedroom. The officers also found a Glock pistol modified to fire in fully automatic mode and magazines loaded with ammunition in a tool room on the first floor of the home.

Lugo was later interviewed by federal law enforcement agents, at which time he denied that the Glock pistol and money found were his, but admitted that one of the co-defendants (Roger) had been staying with him. The government obtained an arrest warrant for Lugo and his two co-defendants on the following day and a complaint was issued, charging Lugo with illegal possession of a firearm.

Lugo was indicted on July 22, 2015, arraigned in August of that same year, and initially pled not guilty to the one charge lodged against him for illegal possession of a firearm. On September 11, 2015, Lugo moved to change his plea to guilty. At

his change-of-plea hearing, the magistrate judge found Lugo competent to knowingly change his plea and Lugo voluntarily pled guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).[3] During a subsequent meeting with probation, Lugo accepted responsibility for the crime, admitting that he had found the gun shortly before being arrested and had made a "big mistake" in keeping it.

On January 15, 2015, probation filed an amended presentence investigation report ("PSI"). The PSI calculated Lugo's base offense level at 22, pursuant to U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2K2.1(a)(3) (U.S. Sentencing Comm'n 2015), and subtracted three levels for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, which resulted in a total offense level of 19. Lugo's criminal history included, in 2005, a prior arrest and conviction for conspiracy to possess with the intent to distribute controlled substances -- a conviction for which Lugo served a sentence of thirty-seven months' imprisonment and a term of three years of supervised release. Accordingly, the PSI calculated Lugo's Criminal History Category at II, pursuant to U.S.S.G. Chapter 5, Part A. The resulting applicable Guidelines range, based upon a total offense level of 19 and a Criminal History Category of II, was 33-41 months.

---

[3] Lugo does not challenge the validity of his change of plea.

The PSI also noted other criminal conduct, pending charges, and other arrests in Lugo's history. The PSI specifically noted a dismissed state criminal case involving a traffic accident and a pending state criminal case for possession with intent to distribute controlled substances. Although noted in the PSI, neither the dismissed nor pending cases were used to calculate Lugo's overall Criminal History Category.

The PSI also stated that the district court "may exercise its discretion by considering a sentence under a variance pursuant to the provisions of 18 U.S.C. § 3553(a), while taking into consideration the defendant's history and characteristics, the nature and circumstances of the offense, as well as the need to promote respect for the law and afford adequate deterrence for the crimes committed by the defendant." The PSI noted further that the court may specifically consider "Puerto Rico's high firearms and violent crime rate, as well as whether the impact of this particular offense in Puerto Rico is more serious than that considered by the Sentencing Commission when it drafted the guidelines." Lastly, probation also recommended that Lugo remain "under curfew at his residence of record from 6:00 p.m. to 6:00 a.m. for a period of 6 months" as part of his supervised release.

Lugo filed written objections to the PSI, challenging: (1) probation's notation that the district court could issue a variant sentence and (2) probation's recommendation that he be

subject to a curfew and electronic monitoring as conditions of supervised release.  Lugo reiterated these objections in his sentencing memorandum while the government requested an above-Guidelines sentence of 48 months in its sentencing memorandum.

**B. Sentencing Hearing**

During sentencing, Lugo's attorney raised several objections to the issuance of an above-Guidelines sentence -- he argued that:

- the district court should not consider "[t]he high firearms and violent crime rate in Puerto Rico[, which] cannot be attributed to [Lugo] solely";

- Lugo "should not be responsible, as stated, for any antisocial conduct attributed to any third person, other criminal conduct that is not attributed to him."  In other words, Lugo's attorney argued that Lugo -- who was only charged with illegal firearm possession -- should not be punished more severely based on the actions of his co-defendants who were charged with (and ultimately pled guilty to) other drug-related offenses;

- neither a curfew nor electronic monitoring should be imposed as conditions of supervised release because such restrictions would "not permit Mr. Lugo-Cartagena to continue running his [lawful] business"; and

- the court should ignore the government's reference to a pending state criminal charge for drug possession with intent to distribute since "no evidence towards that charge has been presented and there is a presumption of innocence that is in favor of [Lugo]."

In response, the district court explained that it was not considering Puerto Rico's high firearms and violent crime rates "by itself," but as one factor in addition to the PSI, statements made at the sentencing hearing, Lugo's allocution, and the sentencing memoranda. With regard to Lugo's argument that he should not be responsible for the actions of his co-defendants, the district court responded that although Lugo himself was not charged with any drug-related offenses, "he was allowing his residence to be used for illegal acts." As for Lugo's objection to "the curfew or the home detention being recommended in the [PSI]," the district court clarified that the condition recommended was a curfew, "not home detention." With regard to the government's reference to the pending state court case, the district court acknowledged and agreed with Lugo's counsel that Lugo was presumed innocent until proven otherwise, noting that "I realize that. It's something that is there and the probation officer has to indicate [it] in his pre-sentence investigation report." The government reiterated its recommendation of an above-Guidelines sentence of 48 months "based on [Lugo's] history, prior

offense and the particular type of firearm that was found, including the ammunition."

After hearing from Lugo's counsel, the government, and Lugo himself, the court calculated the applicable Guidelines range at 33-41 months as indicated in the PSI. The court then proceeded with its sentencing task. The court noted Lugo's criminal history as well as the dismissed and pending charges referenced in the PSI. Specifically, the court noted that while one state court charge had been dismissed, the remaining and pending drug charge was set for trial the following January, but was "not relevant conduct to this case." The court stated that it had considered the 18 U.S.C. § 3553(a) factors and also explained that deterrence was an important factor in its sentencing decision because "weapons like [the automatic Glock pistol] are . . . why the murder rate . . . is so high" in Puerto Rico.

Following its explanation, the court imposed a variant sentence of 48 months, finding that an above-Guidelines sentence "reflect[ed] the seriousness of the offense, promote[d] respect for the law, protect[ed] the public from further crimes by Mr. Lugo, and addresse[d] the issues of deterrence and punishment." The court also imposed a term of three years' supervised release, which included as conditions of release the imposition of a 6:00 p.m. to 6:00 a.m. curfew and electronic monitoring for the first

six months of release.  Lugo filed this timely appeal, arguing that the sentence imposed is unreasonable.

## DISCUSSION

We review the reasonableness of a sentence for abuse of discretion.  United States v. Maisonet-González, 785 F.3d 757, 762 (1st Cir.), cert. denied sub nom. Maisonet v. United States, 136 S. Ct. 263 (2015).  Such review is bifurcated, requiring us to ensure that the sentence is both procedurally and substantively reasonable.  United States v. Zapata-Vázquez, 778 F.3d 21, 23 (1st Cir. 2015).  However, when reviewing procedural reasonableness, specifically, "we afford de novo review to the sentencing court's interpretation and application of the sentencing guidelines, assay the court's factfinding for clear error, and evaluate its judgment calls for abuse of discretion."  United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir.), cert. denied, 136 S. Ct. 258 (2015).  The standard of review becomes plain error "[if] a party fails to preserve claims of error in the court below."  Id.  Even if we assume that Lugo properly preserved his reasonableness challenge, his arguments fail to pass muster even under the more favorable abuse-of-discretion standard.[4]

---

[4] The government argues that Lugo waived his right to raise a reasonableness challenge because both Lugo and his counsel stated at the sentencing hearing that the defendant was willing to accept the district court's sentencing decision.  We decline to address the government's argument because even if we assume Lugo's

## A. Procedural Reasonableness

On appeal, Lugo seems to concede that the district court was free to consider his criminal history, the high rate of violent crime, as well as "all of the circumstances under which he committed the offense." Indeed, a district court may properly and in its discretion consider such community factors in its sentencing determination. See Zapata-Vázquez, 778 F.3d at 23 (dismissing appellant's claim that "the district court placed too much emphasis on the prevalence of firearms and violent crime in Puerto Rico without regard to the specific circumstances of his case" because "[i]t is well-settled that the sentencing court may take into account the characteristics of the community in which the crime took place when weighing the offense's seriousness and the need for deterrence"); United States v. Fields, 858 F.3d 24, 28 (1st Cir. 2017) ("Our review 'is characterized by a frank recognition of the substantial discretion vested in a sentencing court.'" (quoting United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013))).

Lugo argues that his sentence is nevertheless "unreasonably high" because the district court "took as a proven fact that Mr. Lugo-Cartagena permitted others to commit illegal acts in his residence." Lugo contends that the "conclusion that

reasonableness challenge is not waived, the challenge fails under the more favorable standard of review.

[he] permitted others to sell drugs from his residence" was "unfounded" and an improper basis to impose an above-Guidelines sentence. See United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014) (a sentencing court commits procedural error if it "predicat[es] a sentence on clearly erroneous facts" (citing United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008))).

We review the judge's finding of fact for clear error. Fields, 858 F.3d at 29. "Clear error review is respectful and requires that we accept findings of fact and inferences drawn therefrom unless, 'on the whole of the record, we form a strong, unyielding belief that a mistake has been made.'" Id. (quoting United States v. Demers, 842 F.3d 8, 12 (1st Cir. 2016); see also United States v. Nuñez, 852 F.3d 141, 144 (1st Cir. 2017). We find no such mistake here.

The consideration of whether Lugo allowed his home to be used for illegal activity first came up at the sentencing hearing when Lugo's attorney argued that Lugo should not be held responsible for any drug-related conduct of his co-defendants. The following exchange took place:

> **[COUNSEL FOR LUGO]:** Your Honor, we think that [Lugo] should not be responsible, as stated, for any antisocial conduct attributed to any third person, other criminal conduct that is not attributed to him.
>
> **[THE COURT]:** Well, he was allowing his residence to be used for illegal acts.

- 11 -

> **[COUNSEL FOR LUGO]:** Your Honor, that's an assertion that's being made by the --
>
> **[THE COURT]:** Well, that's why they searched his residence.
>
> **[COUNSEL FOR LUGO]:** We understand that that's why they searched his residence, Your Honor, but he was not charged for drug conduct. He was charged for possessing a weapon.
>
> **[THE COURT]:** I understand, but those are things that I have to consider.

The government argued that surveillance tapes, which had been made available to Lugo, revealed individuals selling narcotics in Lugo's home and that Lugo had admitted that he was the only resident of the home. The court went on to conclude that Lugo "was allowing his residence to be used for illegal activities, especially the selling of illegal drugs."

In reaching this conclusion, the judge noted that the police had obtained a search warrant for Lugo's home based on surveillance and that a sworn statement by a police officer involved in the investigation indicated that Lugo was inside his residence when the drug transactions were taking place.

Although Lugo contends that there was no evidence of his knowledge of individuals selling drugs in his home, the circumstances surrounding Lugo's arrest, his history, and the whole of the record support the district court's view that he was aware of the drug activity occurring. See Fields, 858 F.3d at 30 (district court's "on-the-spot judgment is entitled to

- 12 -

considerable weight" and "[t]hough a different finding may have been supportable in view of the appellant's history of drug abuse, the district court was not required to interpret the record in the manner that the appellant urged"). Lugo had been previously convicted of conspiracy to possess controlled substances with intent to distribute and admitted that he, alone, resided in the home searched. Lugo also admitted that he had allowed one co-defendant charged with a drug offense (Roger) to stay with him. And "where there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous." United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990).[5]

---

[5] On appeal, Lugo also states that the district court "took into consideration a case whose trial, at the moment of sentencing, was pending under article 401 of the PR Controlled Substance Act" and that "[t]he court also took into consideration the nature of the weapon involved and the incidence of crime in Puerto Rico." As an initial matter we note that it is unclear whether Lugo takes issue with the district court's alleged consideration of these factors. Because Lugo fails to develop any argumentation regarding these issues, such claims are deemed waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). In any event, we find no error here. First, contrary to Lugo's contentions, the district court did not take into consideration his pending state court case at sentencing. In fact the district court explicitly stated that the pending state court case was "not relevant conduct to this case." And, as already noted, the district court was free to take into account the nature of the weapons involved and the incidence of crime in Puerto Rico. See Flores-Machicote, 706 F.3d at 23 ("[T]he incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence."); United States v. Quiñones-Meléndez, 791 F.3d 201,

**B. Substantive Reasonableness**

To the extent that Lugo also argues that his sentence is substantively unreasonable, "[t]he hallmarks of a substantively reasonable sentence are 'a plausible sentencing rationale and a defensible result.'" Zapata-Vázquez, 778 F.3d at 24 (quoting Martin, 520 F.3d at 96). The district court's justification for its sentence was concise, noting Lugo's criminal history, the nature and circumstances of the offense, and the need to deter the illegal possession of guns because of the negative effect that they have on Puerto Rico's murder rate. See United States v. Rivera-González, 776 F.3d 45, 51 (1st Cir. 2015) (finding a sentence substantively reasonable when the sentencing court's rationale considered the defendant's role as a drug dealer and the need to deter illegal gun possession). The court also explained that the variant sentence "reflects the seriousness of the offense, promotes respect for the law, protects the public from further crimes by Mr. Lugo, and addresses the issues of deterrence and punishment." Accordingly, the court offered "a plausible

_____

207 (1st Cir. 2015) (affirming a sentence as reasonable where the district court took into consideration "the heightened dangerousness posed by automatic weapons of the sort [the appellant] had admitted possessing, and the seriousness of firearm offenses in Puerto Rico.").

rationale" for its decision to apply a seven-month upward variance in Lugo's sentence.  Flores-Machicote, 706 F.3d at 21 ("When a court varies from the GSR, its reasons for doing so 'should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender.'  In such a situation, the factors deemed relevant by the sentencing court 'must add up to a plausible rationale' for the sentence imposed and 'must justify a variance of the magnitude in question.'" (citations omitted)).

## CONCLUSION

For the foregoing reasons, we **affirm** Lugo's 48-month sentence.