# United States Court of Appeals
## For the First Circuit

No. 18-1965

UNITED STATES OF AMERICA,

Appellee,

v.

BRENT HERCULES, a/k/a Herc, a/k/a B,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Selya, and Barron,
Circuit Judges.

Angela G. Lehman for appellant.
Benjamin M. Block, Assistant United States Attorney, with
whom Halsey B. Frank, United States Attorney, was on brief, for
appellee.

January 9, 2020

**SELYA**, **Circuit Judge**.  This appeal presents a question of first impression in this circuit:  is a defendant's potential future deportation a factor that a sentencing court may consider under 18 U.S.C. § 3553(a)?  Although we answer this question in the affirmative, we conclude that the court below acted well within the encincture of its discretion in determining that it would not give weight to the appellant's potential future deportation. Therefore, we reject the appellant's claims of error and uphold the challenged sentence.

## I. BACKGROUND

Because this sentencing appeal follows a guilty plea, we gather the relevant facts from the change-of-plea colloquy, the undisputed portions of the presentence investigation report (PSI Report), and the transcript of the disposition hearing.  See United States v. Narváez-Soto, 773 F.3d 282, 284 (1st Cir. 2014). Beginning in September of 2015, defendant-appellant Brent Hercules participated in a conspiracy to transport drugs into central Maine for distribution.  During a period of approximately eleven months, the appellant drove vehicles carrying drugs, drug dealers, and/or drug proceeds between New York and Maine once or twice each week.

In May of 2017, the hammer fell:  a federal grand jury sitting in the District of Maine charged the appellant with one count of conspiracy to distribute and possess with intent to distribute controlled substances, see 21 U.S.C. §§ 841(a)(1), 846,

and one count of possession with intent to distribute the same, see id. § 841(a)(1). After some preliminaries, not relevant here, the appellant pleaded guilty to both counts. When prepared, the PSI Report revealed that the appellant had been born in the British Virgin Islands in 1986 and had immigrated to the United States with his parents when he was three years of age. He became a lawful permanent resident in July of 1999. By the time of sentencing, U.S. Immigration and Customs Enforcement (ICE) had filed a detainer against the appellant with an eye toward subsequent deportation.

Prior to the disposition hearing, the appellant submitted a sentencing memorandum in which he asserted that he was certain to be deported after serving his sentence. He therefore beseeched the sentencing court, when mulling the factors delineated in 18 U.S.C. § 3553(a), to consider his future deportation and the possibility of a downward variance on that basis.[1] The government opposed this entreaty, contending that the appellant's deportation was not a "foregone conclusion" and that

---

[1] A variance is a non-guidelines sentence that "result[s] from a court's consideration of the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a)." United States v. Rodríguez-Reyes, 925 F.3d 558, 567 (1st Cir.) (quoting United States v. Aponte-Vellón, 754 F.3d 89, 93 (1st Cir. 2014)), cert. denied, 140 S. Ct. 193 (2019); see United States v. Heindenstrom, ___ F.3d ___, ___, No. 18-2187, slip op. 1, 10-11 (1st Cir. 2019).

- 3 -

a criminal defendant's potential deportation was an inappropriate ground for imposing a downwardly variant sentence.

The district court addressed this dispute at the outset of the disposition hearing. The court enumerated three reasons why it would not take the appellant's potential future deportation into account either as a sentencing factor or, by extension, as a basis for lowering the appellant's sentence.

First, the court stated that although there was surely "a risk" that the appellant would be deported after serving his sentence, it was "not at all convinced that [he] will, in fact, be deported." In support, the court noted shifting immigration enforcement priorities among various presidential administrations, particularly with respect to "individuals like the [appellant,] who was brought here as a child." In a similar vein, the court noted that the appellant had two prior state drug convictions, neither of which had triggered his deportation.[2] Given what it characterized as the "uncertainty" surrounding the appellant's deportation, the court expressed discomfort with reducing his sentence based on a future event that might never occur.

Second, the court explained its view that potential future deportation qualifies as a "collateral consequence" of

---

[2] The PSI Report indicates that these two state convictions were misdemeanors, but the district court initially referred to them as felonies. The court, though, accurately described the substance of these convictions later in the disposition hearing.

committing a federal criminal offense. Even though the court recognized that it was not "forbidden from considering" collateral consequences, it described such consequences as difficult to assess inasmuch as every defendant potentially faces wide-ranging repercussions as a result of a federal criminal conviction (including difficulty securing employment and strained personal and familial relationships).

Third, the court highlighted its "greatest concern" with considering the possibility of future deportation: that placing such a factor into the mix might lead inexorably to sentencing disparities between citizen- and noncitizen-defendants. In the court's judgment, it would be "fundamentally wrong" to reduce a noncitizen-defendant's sentence because of potential future deportation when comparable arguments about immigration status "would not be available" to a similarly situated citizen-defendant.

Relying on these reasons, the court determined that it would not give weight to the appellant's potential deportation when fashioning the appellant's sentence. Later on, the court reiterated its view that it had "the discretion to consider deportation" but that "this is not the right case to do it."

Without objection, the district court proceeded to adopt the guideline calculations limned in the PSI Report, set the appellant's total offense level at 29, and placed him in criminal

history category III.  These computations yielded a guideline sentencing range (GSR) of 108 to 135 months.  The government recommended a bottom-of-the-range sentence (108 months). Stressing his acceptance of responsibility and his relatively limited role as a driver for the drug ring, the appellant sought a downwardly variant 60-month sentence.

After weighing the pertinent section 3553(a) factors, the district court varied downward (albeit not on the basis of the appellant's potential deportation) and imposed an 87-month term of immurement.  In explaining its sentencing rationale, the court acknowledged the large amount of drugs and drug proceeds that the appellant had transported and found that the appellant had played a "limited but essential role" in the conspiracy.  The court noted, however, that the appellant had neither performed a managerial role in the conspiracy nor engaged directly in distribution.

Along with the prison sentence, the district court imposed a three-year term of supervised release, attaching several special conditions.  These special conditions included a stipulation that the appellant be surrendered to ICE after serving his prison sentence and, "[i]f ordered deported," remain outside the United States during the period of supervised release.

This timely appeal followed.

## II. ANALYSIS

When confronted with claims of sentencing error, we engage in a two-step pavane. See United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013). To begin, we inquire into any alleged procedural errors, such as miscalculating the GSR, failing to consider the section 3553(a) factors, or basing a sentence on clearly erroneous facts. See id. If the sentence proves procedurally sound, we then inquire into its substantive reasonableness. See id.

At each step of this bifurcated analysis, the abuse-of-discretion standard governs our review. See Gall v. United States, 552 U.S. 38, 51 (2007); Narváez-Soto, 773 F.3d at 285. This standard is not monolithic: under its umbrella, we review findings of fact for clear error and questions of law (including those involving the application and interpretation of the sentencing guidelines) de novo. See Narváez-Soto, 773 F.3d at 285.

The appellant's principal plaint is that the district court misapprehended the likelihood of his future deportation. Specifically, he submits that the court erred by deeming his future deportation merely "possible," when in point of fact "he is subject to mandatory deportation with no possible relief." In the appellant's view, this misapprehension infected the district court's decision not to consider his future deportation when crafting an appropriate sentence.

- 7 -

Before grappling with the appellant's arguments, we pause to locate them within the applicable analytic framework. In his opening brief, the appellant did not explicitly characterize his argument about the inevitability of deportation in terms of either procedural or substantive error. The government, though, characterized this argument as a claim of procedural and factual error, and the appellant has not disputed this characterization. Consequently, we treat the appellant's argument about the likelihood of his deportation as a claim of procedural (and more specifically, factual) error.

Against this backdrop, we turn to the district court's determination that the appellant's future deportation was possible but not a sure thing. We review this factual determination for clear error. See United States v. Fields, 858 F.3d 24, 29 (1st Cir. 2017). Clear error review is deferential and "requires that we accept findings of fact and inferences drawn therefrom unless, 'on the whole of the record, we form a strong, unyielding belief that a mistake has been made.'" Id. (quoting United States v. Demers, 842 F.3d 8, 12 (1st Cir. 2016)). When a sentencing court faces "more than one plausible view of the circumstances, [its] choice among supportable alternatives cannot be clearly erroneous." Id. at 30 (quoting United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990)).

Here, it cannot be gainsaid that the appellant is quite likely to be deported to his homeland (the British Virgin Islands) once he has served his prison sentence. After all, the appellant's convictions are for aggravated felonies. See 8 U.S.C. § 1101(a)(43)(B) (defining "aggravated felony" to comprise "drug trafficking crime[s]" under 18 U.S.C. § 924(c)); 18 U.S.C. § 924(c)(2) (defining "drug trafficking crime" to include "any felony punishable under the Controlled Substances Act"). This status entails wide-ranging consequences. As a general matter, noncitizens convicted of aggravated felonies are deportable under federal law.[3] See 8 U.S.C. § 1227(a)(2)(A)(iii). In turn, deportable noncitizens "shall, upon the order of the Attorney General, be removed" from the United States. Id. § 1227(a). And the appellant's aggravated felony convictions render him ineligible for various forms of relief from removal. See id. § 1229b(a)(3) (cancellation of removal); id. § 1231(b)(3)(B)(ii) (withholding of removal); id. § 1158(b)(2)(A)(ii), (B)(i) (asylum). Theoretically, then, "removal is practically inevitable" under contemporary law for noncitizens who commit removable offenses. Padilla v. Kentucky, 559 U.S. 356, 363-64

---

[3] Noncitizens convicted of violations of federal, state, or foreign laws relating to controlled substances are also deportable under federal law. See 8 U.S.C. § 1227(a)(2)(B)(i). There is an exception to this rule. See id. (memorializing "own use" exception relating to single offense for possession of 30 grams or less of marijuana). That exception is not relevant here.

(2010).  What is more, the Supreme Court has noted that the risk of removal is especially pronounced for noncitizens convicted of offenses "related to trafficking in a controlled substance" because discretionary relief from removal is generally "not available" for such individuals.  Id. at 364.

But despite the high likelihood of the appellant's eventual deportation under the current statutory scheme,[4] we cannot say that the district court clearly erred by deeming the appellant's future deportation uncertain.  In practice, enforcement of the immigration laws has not always been a model of consistency, and the district court plausibly noted that the immigration enforcement priorities of the Executive Branch "seem to be in flux," changing with the ebb and flow of political tides.  So, too, the court correctly observed that the appellant had not been deported in the past notwithstanding two prior convictions for state drug offenses.  See 8 U.S.C. § 1227(a)(2)(B)(i) (establishing that noncitizens convicted of violations of state controlled substances offenses are deportable).  Relatedly, the court commented on the appellant's 2007 state felony conviction for attempted criminal possession of a weapon.  Although this

---

[4] We think it worth noting that the appellant did not cite either the statutory scheme or the Padilla decision before the sentencing court.  Instead, he based his argument about his virtually certain deportation on the ICE detainer and generic assertions that, for instance, he would "in all likelihood" be deported.

conviction almost certainly rendered the appellant deportable, see id. § 1227(a)(2)(C) (deeming noncitizens convicted under any law for attempted possession of firearm deportable), the record contains no evidence that this conviction ever triggered any proceedings aimed at the appellant's deportation.

Given the substantial possibility of shifting immigration policies and fluctuating enforcement priorities during the appellant's lengthy 87-month incarcerative term, the district court's determination that the appellant's future deportation was not a matter of absolute certainty was a reasonable assessment of the appellant's circumstances. Consequently, we hold that the district court's finding as to the likelihood of the appellant's future deportation was not clearly erroneous. See Fields, 858 F.3d at 30.

This brings us to the district court's decision not to consider the appellant's potential deportation when calibrating an appropriate sentence. Our review is under the abuse-of-discretion rubric. See id. at 28.

In an earlier case involving a conviction for illegal reentry under 8 U.S.C. § 1326(a), we rejected a defendant's argument that the sentencing court should have imposed a non-guidelines sentence on the basis of his "immediate detention and likely future deportation once released from prison." United States v. Jiménez-Beltre, 440 F.3d 514, 520 (1st Cir. 2006) (en

- 11 -

banc), abrogated on other grounds by Rita v. United States, 551 U.S. 338 (2007). There, the defendant argued that his potential future deportation "made a normal guideline sentence unnecessary for deterrence or public protection and was a pertinent factor under 18 U.S.C. § 3553(a)(2)." Id. Dismissing these arguments, we observed that because the "crime in question — re-entry after deportation — is ordinarily going to be committed by persons who will be deported after their sentences have been served," the GSR "was likely predicated on this understanding." Id. We added that the defendant in that case, who had reentered the United States after deportation, was "hardly in a good position to argue for a shorter sentence on the ground that another deportation of him will protect the public adequately against yet another repetition." Id.

We have not yet had occasion, though, to explore a sentencing court's ability to consider a defendant's potential deportation outside the illegal reentry context. Like several other courts of appeals, see, e.g., United States v. Flores-Olague, 717 F.3d 526, 535 (7th Cir. 2013) (observing that a "sentencing court is well within its prerogatives and responsibilities in discussing a defendant's status as a deportable alien" when considering a defendant's history); United States v. Petrus, 588 F.3d 347, 356 (6th Cir. 2009) (acknowledging that sentencing court may consider defendant's "potential deportation" and "immigration

status"), we now hold that a sentencing court has the discretion, in an appropriate case, to weigh the possibility of future deportation when mulling the section 3553(a) factors in an effort to fashion a condign sentence.[5]

Under appropriate circumstances, a defendant's potential deportation may properly be considered as part of a broader assessment of his history and characteristics pursuant to section 3553(a)(1). On the right factual record, a defendant's potential deportation also may prove relevant to whether a sentence will adequately "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Future threats to the community might conceivably be mitigated in a situation in which, upon release from imprisonment, the defendant will promptly be deported. Cf. United States v. Morales-Uribe, 470 F.3d 1282, 1287 (8th Cir. 2006) (making this point but concluding that defendant's impending deportation "would not support a substantial downward variance" on this basis since defendant had thrice attempted unlawful entry).

This is not to say that a sentencing court always must consider a defendant's potential deportation when fashioning an

---

[5] The out-of-circuit decisions cited in this opinion discuss potential deportation in a variety of factual contexts. We cite these opinions to support general legal propositions, without implying endorsement of each court's specific application of those propositions.

appropriate sentence. Moreover, we expect that variances from the GSR on this basis, although permissible in the right factual context, will likely prove rare. In the last analysis, though, "[s]entencing is much more an art than a science," and the weight to be given relevant data points "is largely within the [sentencing] court's informed discretion." United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011). We think it follows that a sentencing court does not perforce abuse its discretion by declining to speculate on a defendant's potential future deportation. See United States v. Gomez-Jimenez, 750 F.3d 370, 384 n.8 (4th Cir. 2014). Thus, our holding here simply adds to the chorus of circuit courts recognizing that, in the relatively rare circumstances in which potential future deportation is an arguably appropriate sentencing factor, a district court does not abuse its discretion either by weighing or declining to weigh that factor in its sentencing calculus under section 3553(a). See, e.g., id.; Flores-Olague, 717 F.3d at 535.

In this instance, the district court expressed some general reservations about taking a defendant's potential future deportation into account. Withal, the court did not categorically foreclose the consideration of a defendant's potential deportation in all cases. To the contrary, the court stated explicitly that it had the discretion to consider the likelihood of future deportation in the "right case." Seen in this light, the court

did not run afoul of the longstanding principle that "generally courts should not categorically reject a factor as a basis for" deviating from a guidelines sentence. United States v. Olbres, 99 F.3d 28, 34 (1st Cir. 1996); see Koon v. United States, 518 U.S. 81, 106-07 (1996) ("Congress did not grant federal courts authority to decide what sorts of sentencing considerations are inappropriate in every circumstance.").

The record makes manifest that three factors informed the district court's decision that this was not an appropriate case in which to take the likelihood of the appellant's future deportation into account. These factors included the court's assessment that the appellant's future deportation was "speculative"; its conclusion that future deportation would be a "collateral consequence" of committing a federal crime; and its concern that reducing a noncitizen's sentence because of the prospect of future deportation could create sentencing disparities vis-à-vis similarly situated citizen-defendants. Nothing in the sentencing transcript or elsewhere in the record suggests that the court gave any one of these variables dispositive weight. Where, as here, a sentencing court declines to factor into the sentencing calculus a defendant's potential future deportation because of an amalgam of appropriate concerns, no abuse of discretion occurs.

In sum, a sentencing court enjoys wide discretion to "custom-tailor an appropriate sentence" using a "flexible, case-

by-case approach." Flores-Machicote, 706 F.3d at 20-21. The district court's decision not to consider the appellant's potential future deportation in the case at hand falls comfortably within the ambit of this wide discretion. Here, moreover, the district court did not clearly err by determining that deportation was not absolutely certain to transpire. And to the extent that the appellant "seeks to substitute his judgment" about the relevance of his potential deportation for the contrary judgment of the district court, "[w]e cannot countenance such a substitution." Clogston, 662 F.3d at 593.

## III. CONCLUSION

We need go no further.[6] For the reasons elucidated above, the appellant's sentence is

**Affirmed.**

---

[6] The appellant has not argued, either below or on appeal, that his sentence is substantively unreasonable. Thus, we have no need to address that issue.