# United States Court of Appeals
## For the First Circuit

No. 19-1284

UNITED STATES OF AMERICA,

Appellee,

v.

ALEXIS O. DÍAZ-LUGO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Kayatta, Circuit Judges.

José Agustin Arce-Díaz on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Julia M. Meconiates, Assistant United States Attorney, on brief for appellee.

June 24, 2020

**SELYA**, **Circuit Judge**.  Defendant-appellant Alexis O. Díaz-Lugo complains that he cooperated fulsomely with federal authorities after the time of his arrest, yet his cooperation was given no tangible recognition by the sentencing court.  He also complains about a number of other alleged sentencing errors.  Because all of the appellant's claims run headlong into impassible roadblocks, we affirm his upwardly variant sixty-month sentence.

## I. BACKGROUND

We start by sketching the facts and the travel of the case.  In November of 2017, Puerto Rico police officers, conducting a carjacking investigation, stopped a motor vehicle in which the appellant and two other men were riding.  In the car, the officers found two firearms that were altered to fire automatically and four high-capacity (extended) magazines.

The appellant was no stranger to law enforcement.  Approximately five years earlier, he had pleaded guilty in a local court to illegal appropriation of a vehicle and had been sentenced under a diversionary program.  Placed on probation, he lost little time in violating the conditions of his release by absconding from supervision in March of 2013.  That same year, he was charged federally with being a felon in possession of a firearm.  See 18 U.S.C. § 922(g)(1).  He pleaded guilty to the federal charge, and the district court sentenced him to a twenty-seven-month term of immurement, followed by three years of supervised release.

Once he served his federal prison sentence, he was remitted to the custody of the Puerto Rico authorities to face an abscondment-from-probation charge. He served time for that probation violation and, following his release from local custody, the district court sentenced him to serve an additional ten months in prison for a supervised release violation. At the same time, the court imposed an additional two-year term of supervised release. The appellant began serving this new term of supervised release in August of 2017 (approximately three months before he was arrested in the course of the carjacking investigation).

On December 7, 2017, a federal grand jury sitting in the District of Puerto Rico returned an indictment naming the appellant and two codefendants. As relevant here, the grand jury charged the appellant with being a prohibited person (specifically, a previously convicted felon) in possession of firearms and ammunition, see id., and being in possession of a machine gun, see id. § 922(o)(1). The appellant initially maintained his innocence but — after informing the court that he was considering cooperating — he indicated a desire to change his plea. His case was then transferred to the judge who was considering the probation office's motion to revoke his existing term of supervised release. He proceeded to enter a straight guilty plea to both counts of the indictment.

Once the appellant had pleaded guilty, the probation office prepared a presentence investigation report (the PSI Report), which made a series of recommended calculations and suggested a guideline sentencing range (GSR) of thirty to thirty-seven months. Neither side objected to the proposed GSR. At the disposition hearing, the appellant sought a twenty-four-month sentence, and the government advocated a thirty-month sentence. The sentencing court spurned both recommendations and sentenced the appellant to serve a sixty-month term of immurement on each count, concurrent with each other, but consecutive to any sentence to be imposed for revocation of the appellant's existing term of supervised release. This timely appeal followed.

## II. ANALYSIS

In this venue, the appellant does not challenge the sentencing court's guideline calculations but, even so, attacks his sentence as both procedurally flawed and substantively unreasonable. Appellate review of claims of sentencing error "involves a two-step pavane." United States v. Miranda-Díaz, 942 F.3d 33, 39 (1st Cir. 2019). Under this bifurcated approach, we first examine any claims of procedural error. See United States v. Matos-de-Jesús, 856 F.3d 174, 177 (1st Cir. 2017). If the challenged sentence passes procedural muster, we then proceed to examine any claim of substantive unreasonableness.

- 4 -

See United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015).

At both steps of this pavane, our review of preserved claims of error is for abuse of discretion. See Gall v. United States, 552 U.S. 38, 46 (2007); United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013). For simplicity's sake, we assume — favorably to the appellant — that his various claims of error are preserved. The abuse-of-discretion standard is multifaceted. When that standard obtains, we review the district court's factual findings for clear error and examine its answers to questions of law (including questions involving the "interpretation and application of the sentencing guidelines") de novo. See United States v. Ilarraza, __ F.3d __, __ (1st Cir. 2020) [No. 19-1395, slip op. at 8]; Flores-Machicote, 706 F.3d at 20.

With this brief preface, we turn first to the appellant's fleet of procedural claims. Once that fleet has sailed, we appraise his claim that his sentence is not substantively reasonable.

**A. Claims of Procedural Error.**

**1. Cooperation.** The flagship of the appellant's fleet of procedural claims is his claim that the sentencing court failed to appreciate its discretion to consider his cooperation with the government and impose a downwardly variant sentence on

- 5 -

that ground.  He argues that such discretion exists under 18 U.S.C. § 3553(a) notwithstanding the government's decision not to file a motion for a "substantial assistance" departure under USSG §5K1.1.  In the appellant's view, his participation in three proffer sessions, during which he gave what he labels as "valuable truthful information" to the government, demonstrated "a reduced likelihood of recidivism" and was "a beneficial part of his . . . history and character."

We agree with the appellant's premise:  a sentencing court ordinarily has discretion to consider a defendant's cooperation with the government as a mitigating factor.  See United States v. Landrón-Class, 696 F.3d 62, 77 (1st Cir. 2012). In an appropriate case, such cooperation may persuade the sentencing court to impose a downwardly variant sentence.  See United States v. Jiménez, 946 F.3d 8, 16 (1st Cir. 2019) ("Our precedent is clear that sentencing courts are permitted to hand down shorter sentences to those who cooperate and show remorse.").  This praxis is consistent with our interpretation of 18 U.S.C. § 3553(a)(1) as broadly instructing sentencing courts to consider a defendant's history and characteristics, which (as we have said) "includes the history of . . . cooperation and characteristics evidenced by cooperation." Landrón-Class, 696 F.3d at 77 (quoting United States v. Fernandez, 443 F.3d 19, 33 (2d Cir. 2006)).  The fact that the

government abstains from moving for a section 5K1.1 departure based on substantial assistance in investigating or prosecuting another does not divest the sentencing court of its statutory discretion to consider a defendant's cooperation and impose a downwardly variant sentence predicated on such cooperation. See id.

Although we agree with the appellant's premise, we disagree with his conclusion that the court below was unaware of its discretion to consider cooperation as a relevant factor in the section 3553(a) sentencing calculus. Nothing in the record so much as hints that the court thought that its sentencing calculus under 18 U.S.C. § 3553(a) was constrained by the government's decision to eschew a downward-departure motion under USSG §5K1.1. The appellant's contrary suggestion is woven out of whole cloth.

The record makes manifest that the appellant's cooperation was a live issue at sentencing. During the disposition hearing, the government forthrightly explained that the appellant sat for several proffer sessions, answered the government's questions, and was willing to cooperate generally. The government went on to state, though, that because the information furnished "was not actionable," it believed that a substantial assistance departure was not justified. In the course of this discussion, the government never suggested that

the appellant's cooperation should not be weighed in the balance when the court determined whether to impose a sentence below, within, or above the GSR. Instead, the government took the position that fairness demanded that the court "be made aware of [the appellant's] willingness to cooperate."

For his part, the appellant's counsel called the court's attention to his sentencing memorandum, which lauded the appellant's cooperation with the government. Counsel urged the court to consider this cooperation in imposing sentence. Discounting the government's description of the fruits of the cooperation, counsel declared that the appellant had supplied "very valuable information." The government interposed no objection either to this line of argument or, more generally, to the sentencing court's consideration of the appellant's cooperation. Where, as here, a sentencing court entertains proffered facts and arguments at the disposition hearing without giving any indication that it will refuse to consider those facts and arguments in constructing its sentencing calculus, there is usually no reason to think that the court failed to consider those facts and arguments in fashioning the sentence. See Landrón-Class, 696 F.3d at 78.

To be sure, the sentencing court — as the appellant points out — never specifically addressed his cooperation. It is common ground, though, that a sentencing court need not speak

to a defendant's arguments one by one and expressly dispose of each of them. See United States v. Cortés-Medina, 819 F.3d 566, 571 (1st Cir. 2016) ("[W]e discern no abuse of discretion in the sentencing court's failure to acknowledge explicitly that it had mulled the defendant's arguments."); see also United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011). When a defendant has identified potentially mitigating sentencing factors and those factors are thoroughly debated at sentencing, the fact that the court "did not explicitly mention them during the sentencing hearing suggests they were unconvincing, not ignored." United States v. Lozada-Aponte, 689 F.3d 791, 793 (1st Cir. 2012).

That ends this aspect of the matter. Viewing the record as a whole, we reject as speculative the appellant's claim that the district court did not appreciate its discretion to consider his cooperation in fashioning his sentence.

Relatedly, the appellant argues that even if the sentencing court considered his cooperation sub silentio, that cooperation demanded a downward variance. This argument is easily dispatched. Although the appellant may have tried his best to cooperate by engaging in several proffer sessions, the information that he provided proved to be (in the government's view) "not actionable." As a result, the government was "unable to build a case around it."

Although a defendant's full-throated cooperation is generally a mitigating factor deserving of weight in the sentencing calculus, see United States v. Doe, 398 F.3d 1254, 1259 (10th Cir. 2005), such cooperation may be entitled to more weight in some cases than in others, see Fernandez, 443 F.3d at 34. Weighing the value of an individual sentencing factor, whether mitigating or aggravating, is a function that, for the most part, falls within the sentencing court's informed discretion. See United States v. Santiago-Rivera, 744 F.3d 229, 232 (1st Cir. 2014).

Here, the court apparently recognized that even though the appellant's cooperation with the government was commendable, not every instance of cooperation is fruitful enough to justify a reduced sentence. The court implicitly applied this reasoning in declining to vary downward. We discern no abuse of discretion: when a defendant's cooperation, though earnest, leads only to a dry hole, a sentencing court does not abuse its discretion by failing to vary downward on account of that cooperation. See Fernandez, 443 F.3d at 34 (upholding denial of downward variance when "cooperation was 'fitful'").

2. **Drug Arrest**. The appellant submits that the sentencing court improperly gave weight to his past arrest for a drug charge. Consideration of the drug arrest was problematic, he says, because he was never convicted of the underlying

- 10 -

offense.  As we explain below, the appellant is fishing in an empty sea.

It is true that the district court, when reviewing the appellant's criminal history, mentioned that he had been "arrested for possession of controlled substances at the [s]tate [c]ourt . . . but these charges were dismissed" on procedural grounds.  This reference, the appellant suggests, violated USSG §4A1.3(a)(3), which prohibits consideration of a prior arrest record for the purpose of imposing an upward departure.  Even though the guideline provision upon which the appellant's argument rests is inapposite,[1] the appellant's claim of error gives us pause.  Arrest records differ materially from convictions, and their place, if any, in sentencing proceedings is not open and shut.

One limitation on the use of an arrest record at sentencing is potentially relevant here:  when an arrest has not ripened into a conviction, a sentencing court may not rely on that

_____

[1] The appellant is obviously incorrect in suggesting that the district court violated USSG §4A1.3(a)(3).  That guideline provision applies only to departures, and we have made it luminously clear that departures and variances are not of the same genre. See Miranda-Díaz, 942 F.3d at 40 (explaining that departure is term of art referring only to non-GSR sentences imposed under guidelines framework whereas variance is based on court's consideration of section 3553(a) factors); United States v. Santini-Santiago, 846 F.3d 487, 490 (1st Cir. 2017) (similar). The case at hand involves a variant sentence, not a departure sentence.

arrest in a manner that equates the arrest with guilt.  See United States v. Díaz-Rivera, 957 F.3d 20, 26-27 (1st Cir. 2020).  Nor may a sentencing court rely on an arrest record as evidence of a defendant's conduct in the absence of some reliable indication that the underlying conduct actually occurred.  See id.

These proscriptions do not mean, however, that the mere mention of an arrest record is forbidden to a sentencing court.  For example, a sentencing court does not abuse its discretion merely by reciting a defendant's arrest record.  See United States v. Rodríguez-Reyes, 925 F.3d 558, 563 (1st Cir.), cert. denied, 140 S. Ct. 193 (2019).

In this instance, the district court mentioned the appellant's drug arrest only while constructing a chronology of the appellant's criminal history.  As quickly as the court referred to the arrest, it completed its recital of the appellant's criminal record and then moved on to a detailed discussion of the section 3553(a) factors — a discussion that did not include any mention of the drug arrest.  What is more, the court made clear that the appellant's criminal history score was derived solely from his prior convictions and his commission of the charged offenses while on supervised release.

On this antiseptic record, it is nose-on-the-face plain that the district court's passing reference to the appellant's drug arrest played no role in the sentencing calculus.  We hold,

therefore, that the sentencing court's mere mention of the drug arrest, solely as a matter of historical fact, was not an abuse of discretion.

The appellant tries a variation on this theme. He maintains that, when chronicling the drug arrest, the sentencing court impermissibly injected "the perceived leniency of Puerto Rico's courts" into the sentencing equation. This occurred, he says, when the court noted that the dismissed drug charge had, "[a]s usual," not been refiled.

Let us be perfectly clear. This observation had no place in the sentencing proceeding and would have been better left unsaid. After all, a perceived systemic deficiency in the local judicial system would not normally be an appropriate sentencing factor, see Flores-Machicote, 706 F.3d at 21, and it was not an appropriate sentencing factor in this case.

For purposes of this appeal, though, the district court's disparagement is a non-issue. A sentencing court's mere grousing about a perceived shortcoming in a local judicial system, without more, does not taint a sentence. And here, there is no "more": the record offers no support at all for the suggestion that the district court, in fashioning the appellant's sentence, gave any weight to the perceived habitual leniency of the Puerto Rico courts. Although it is regrettable that the court muddied the waters by commenting negatively on how the local justice system

- 13 -

handles criminal cases, we detect nothing that calls into question the validity of the appellant's sentence. See, e.g., United States v. Milán-Rodríguez, 819 F.3d 535, 540 (1st Cir. 2016) (finding no abuse of discretion when sentencing court expressed frustration with perceived leniency of Puerto Rico courts while discussing defendant's criminal history); United States v. Rivera-González, 776 F.3d 45, 50-51 (1st Cir. 2015) (finding no abuse of discretion even though sentencing court mentioned leniency of local courts in connection with need for deterrence).

3. **Nullification**. We pivot next to the appellant's contention that the sentencing court effectively nullified his three-level reduction for acceptance of responsibility, see USSG §3E1.1, by imposing an above-the-range sentence. This contention is hopeless.

The court below found that the appellant had accepted responsibility by pleading guilty early in the proceedings and saving the government the expense of a trial. It therefore awarded him a three-level reduction in his total offense level. The court separately determined that an upward variance was appropriate due to the seriousness of the offenses, the need to promote respect for the law, the necessity of protecting the public, and considerations of deterrence and condign punishment. These were distinct sentencing determinations, resting on different factual predicates, and the appellant offers no

principled reason why we should consider the latter determination as a negation of the former determination. To hold that one nullified the other would effectively hamstring a sentencing court by precluding an upward variance whenever a defendant has accepted responsibility.

We add, moreover, that the appellant's nullification theory is plucked out of thin air, unanchored to any developed argumentation. He cites no authority for so radical a proposition, and we are aware of none. And as a practical matter, it seems self-evident that the appellant's upwardly variant sentence might have been even stiffer had he not garnered the acceptance-of-responsibility credit.

**4. Heartland**. Battling on, the appellant attacks the sentencing court's rationale for his upwardly variant sentence on the ground that the GSR fully accounted for the aggravating nature of the firearm he possessed and his commission of the charged crimes while on supervised release. This attack is not entirely without force. We have cautioned that "when a sentencing court relies on a factor already accounted for by the sentencing guidelines to impose a variant sentence, [it] must indicate what makes that factor worthy of extra weight." United States v. Fields, 858 F.3d 24, 32 (1st Cir. 2017) (citing United States v. Zapete-Garcia, 447 F.3d 57, 60 (1st Cir. 2006)).

- 15 -

Even so, a deeper dive into the record allays any such concern. The court below acknowledged with approval the probation officer's guideline calculations and her rendition of the nature and circumstances of the offenses. The court then explained in some detail why certain of the factors embedded in the guideline calculation were deserving of extra weight in this case. To this end, the court was especially troubled by the appellant's possession not only of a machine gun but of two machine guns and four extended magazines. It also worried that machine guns are among the most dangerous of modern weapons based on their ability "to kill dozens of people within seconds" and reflected that such weapons "are not typically possessed by law-abiding citizens for lawful purposes." Similarly, the court elaborated upon the appellant's commission of the charged crimes while on supervised release, expressing concern about the repetitive nature of the appellant's violations of both probationary terms and supervised release conditions.

The relevant guideline provision, see USSG §2K2.1(a)(4)(B), contemplates only a single machine gun. Thus, the guideline calculation did not account for the possession of two machine guns, nor did it account for the possession of four high-capacity magazines. By the same token, the relevant guideline provision, see id. §4A1.1(d), (and, thus, the guideline calculation) does not account for multiple violations

- 16 -

of probationary terms and supervised release conditions. Because these facts remove this case from the heartland of the applicable guideline provisions, we discern no abuse of discretion in the sentencing court's use of them in constructing an upwardly variant sentence. See Fields, 858 F.3d at 32-33.

5. **Variance: Justification and Extent**. The appellant's last claim of procedural error likewise focuses on the upward variance. He asserts that the sentencing court failed "to justify the extent of the variance." This assertion collapses two distinct claims of error: that the sentencing court failed to explain why an upwardly variant sentence was necessary and that the extent of the variance imposed was excessive. We deal with these two facets of the claim separately.

With respect to justification, we acknowledge that a sentencing court is obligated to explicate the basis for a variant sentence. See 18 U.S.C. § 3553(c). This does not mean, though, that the court's explication must "be precise to the point of pedantry." United States v. Fernández-Cabrera, 625 F.3d 48, 53 (1st Cir. 2010). On appeal, a reviewing court must assess the sentencing court's explanation of an upwardly variant sentence in a practical, common-sense manner. To this end, we ask whether the district court reasonably explained the sentence in a manner that relies on factors not adequately accounted for in

the GSR. Such a factor may, for example, be one that simply was not considered in constructing the GSR, see United States v. García-Mojica, 955 F.3d 187, 193 & n.7 (1st Cir. 2020), or one that was considered in constructing the GSR but not in a way that sufficiently accounts for the idiosyncrasies of a particular case, see Fields, 858 F.3d at 32. In each such instance, the sentencing court must identify the factor and explain why the factor calls for an upward variance. See, e.g., United States v. Rivera-Morales, __ F.3d __, __ (1st Cir. 2020) [No. 17-1258, slip op. at 37-38]; Fields, 858 F.3d at 32; Zapete-Garcia, 447 F.3d at 60. The extent of the explanation must be commensurate with the extent of the variance. See Fields, 858 F.3d at 31.

Here, the sentencing court limned four distinct reasons for the steep upward variance. It specifically found that the GSR did not "reflect[] the seriousness of the offense, promote[] respect for the law, protect[] the public from further crimes by [the appellant], or address[] the issues of deterrence and punishment." In explaining its conclusions, the court expressed particular concern about the troubling nature of two machine guns, noting their efficient lethality and the paucity of lawful uses for them. For sentencing purposes, such well-grounded concerns may influence a sentencing court's appraisal of the gravity of a defendant's offense conduct. See United States v. Gallardo-Ortiz, 666 F.3d 808, 816, 818 (1st Cir. 2012).

- 18 -

So, too, the sentencing court leaned heavily on the appellant's criminal history, commenting upon his generalized (and well-documented) "disregard for the law." See 18 U.S.C. § 3553(a)(1), (2)(A); Flores-Machicote, 706 F.3d at 23-24. Specifically, the court observed that the appellant committed the offenses of conviction "despite having a previous [f]ederal conviction, and a revocation" of his supervised release term. Exacerbating the situation, the appellant "continuous[ly] violat[ed]" his supervised release conditions and maintained "negative associations" while on probation and supervised release.

Collectively, these considerations took the appellant's case well outside the heartland of the relevant guideline calculation. See supra Part II(A)(4). They appropriately informed the sentencing court's evaluation of the gravity of the offenses of conviction; the appellant's likely recidivism; his lack of respect for the law; and the risks that the appellant posed to society.

In evaluating the explanation for this upward variance, we do not write on a pristine page. As we stated on an earlier occasion, "[w]here the record permits a reviewing court to identify both a discrete aspect of an offender's conduct and a connection between that behavior and the aims of sentencing, the sentence is sufficiently explained to pass

muster."  United States v. Sepúlveda-Hernández, 817 F.3d 30, 33 (1st Cir. 2016) (alteration in original) (quoting Fernández-Cabrera, 625 F.3d at 54); see Rivera-Morales, __ F.3d at __ [slip op. at 36].  So it is here.  "Because the court made pellucid . . . the driving force[s] in its sentencing calculus, its explanation was sufficient to satisfy the statutory mandate." Rivera-Morales, __ F.3d at __ [slip op. at 37].

This brings us to the portion of the appellant's claim that challenges the extent of the variance and posits that it was excessive.  This assignment of error need not detain us.  To begin, we question whether a claim of excessiveness is a claim of procedural error at all.  In any event, the extent of the variance and the "defensible result" prong of substantive reasonableness, see United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008), are simply two sides of the same coin.  They are alternative (and interchangeable) ways of saying that in the appellant's view the length of his sentence is beyond the pale. See United States v. Fernández-Garay, 788 F.3d 1, 6 (1st Cir. 2015).  To avoid redundancy, we treat this claim of error as part and parcel of the appellant's claim of substantive unreasonableness, to which we repair forthwith.

## B. **Claim of Substantive Unreasonableness**.

The appellant's last stand consists of a claim that his sixty-month sentence is substantively unreasonable.  He

trains his fire on the sentencing court's upward variance.  And we do not gainsay that the upward variance is steep:  twenty-three months (nearly two full years) over the top of the GSR.

We review this claim for abuse of discretion.  See Holguin-Hernandez v. United States, 140 S. Ct. 762, 766 (2020); United States v. Arce-Calderon, 954 F.3d 379, 382 (1st Cir. 2020).  "In the sentencing context, 'reasonableness is a protean concept.'"  Clogston, 662 F.3d at 592 (quoting Martin, 520 F.3d at 92).  Thus, there is not a single reasonable sentence in any given case but, rather, an expansive "universe of reasonable sentencing outcomes."  Id.; see United States v. de Jesús, 831 F.3d 39, 43 (1st Cir. 2016).  Accordingly, we must determine whether the challenged sentence falls within that expansive universe.  In making this determination, we look for the hallmarks of a substantively reasonable sentence:  "a plausible sentencing rationale and a defensible result."  Martin, 520 F.3d at 96.

Typically, a sentencing court has a more intimate knowledge of a particular case than does an appellate court.  See Gall, 552 U.S. at 51-52.  Recognizing the sentencing court's unique coign of vantage, we have regularly declined simply to substitute our judgment for that of the sentencing court.  See, e.g., Miranda-Díaz, 942 F.3d at 42; United States v. Vargas-García, 794 F.3d 162, 167 (1st Cir. 2015).  For similar reasons,

- 21 -

a claim of substantive unreasonableness will fail if it comprises nothing more than "a thinly disguised attempt . . . 'to substitute [the appellant's] judgment for that of the sentencing court.'"  Vargas-García, 794 F.3d at 167 (quoting Clogston, 662 F.3d at 593).  And as long as the sentencing court has mulled all the relevant factors, an appellant cannot prevail merely by carping about the court's relative weighing of those factors.  See United States v. Coombs, 857 F.3d 439, 452 (1st Cir. 2017).

Here, the sentencing court indicated that it had considered all the section 3553(a) factors and discussed a handful of them.  In the process, it focused on the seriousness of the offense conduct, the appellant's checkered past and likelihood of recidivism, and the need to promote respect for the law.  On balance, we think that the court articulated a plausible sentencing rationale (albeit one with which the appellant disagrees).

In our view, the sentencing court also reached a defensible result.  The mere fact that a district court imposes an upwardly variant sentence does not render the sentence substantively unreasonable — and this remains true even where, as here, the upward variance is steep.  See Miranda-Díaz, 942 F.3d at 43; Flores-Machicote, 706 F.3d at 25; Gallardo-Ortiz, 666 F.3d at 811.  Context matters, and the offense conduct in this case was egregious; as we have said, it involved the

- 22 -

possession of two machine guns and four extended magazines on the heels of a previous felon-in-possession conviction. As if to rub salt in an open wound, the appellant committed the offenses of conviction while he was serving a supervised release term incident to that federal felon-in-possession conviction. And, finally, the appellant committed these new offenses against a backdrop of repeated probation violations.

Facts are stubborn things, and a sentencing court is free to draw reasonable inferences from them. See United States v. Montañez-Quiñones, 911 F.3d 59, 67 (1st Cir. 2018), cert. denied, 139 S. Ct. 1388 (2019). Viewed through this lens, we deem fully supportable the findings of the court below that the appellant's offenses were serious; that the prospect of the appellant's recidivism was real; that the need to protect the public was apparent; and that the appellant's earlier interactions with the judicial system seem to have taught him no lessons. Given these supportable findings, we cannot say that a sixty-month sentence was substantively unreasonable. See Flores-Machicote, 706 F.3d at 25; Gallardo-Ortiz, 666 F.3d at 818. Consequently, the district court's imposition of such a sentence was within the encincture of its discretion.

## III. CONCLUSION

We need go no further.  For the reasons elucidated above, the appellant's sentence is


**Affirmed.**