# United States Court of Appeals
## For the First Circuit

No. 20-1838

UNITED STATES OF AMERICA,

Appellee,

v.

JEAN PAUL ORTIZ-PÉREZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Barron, Circuit Judges.

Eric Alexander Vos, Federal Public Defender, Franco L. Pérez-Redondo, Assistant Federal Public Defender, Supervisor, Appeals Division, and Liza L. Rosado-Rodríguez and Kevin E. Lerman, Research & Writing Specialists, on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Gregory B. Conner, Assistant United States Attorney, on brief for appellee.

March 31, 2022

**SELYA**, **Circuit Judge**.   Defendant-appellant Jean Paul Ortiz-Pérez pleaded guilty to two carjacking counts and one firearm-possession count.   On appeal, he challenges his aggregate 150-month prison sentence as procedurally flawed and substantively unreasonable.   Concluding, as we do, that the defendant's arguments lack merit, we affirm.

## I. BACKGROUND

We briefly rehearse the relevant facts and travel of the case.   "Where, as here, a sentencing appeal follows a guilty plea, we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing." United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).

On April 14, 2019, the defendant (then eighteen years of age) pointed a firearm at a man who was retrieving a suitcase from the trunk of his car and ordered him to give the defendant the keys to the car.   The man tossed him the keys, and the defendant drove the car away.

The next month, the defendant followed the same script: he pointed a firearm at a woman who was entering her car, ordered her out, and demanded the keys.   When she complied, the defendant drove the car away.

Roughly a week later, the defendant was arrested.   Both victims identified him as the carjacker.   In due course, a federal

grand jury sitting in the District of Puerto Rico returned a four-count indictment, which charged the defendant with two counts of carjacking (counts 1 and 3), see 18 U.S.C. § 2119(1), and two counts of brandishing a firearm in furtherance of a crime of violence (counts 2 and 4), see id. § 924(c)(1)(A)(ii). Although the defendant initially maintained his innocence, he later entered into a plea agreement (the Agreement) with the government. Under the terms of the Agreement, count 2 was to be reduced to a charge of possession of a firearm in furtherance of a crime of violence, see id. § 924(c)(1)(A)(i), and count 4 was to be dismissed. The defendant would then plead guilty to the two remaining counts and the revised version of count 2.

The district court accepted the defendant's change of plea to the three specified counts and ordered the preparation of a PSI Report. When received, the PSI Report recommended a guideline sentencing range of seventy to eighty-seven months for counts 1 and 3. With respect to count 2, as revised, the PSI Report recommended a guideline range of sixty months (the mandatory minimum under the statute of conviction, see id.). It also noted that the sentence on count 2 had to be imposed consecutively to any sentences imposed on the other counts. See id. § 924(c)(1)(D)(ii).

The defendant filed objections to the PSI Report, which the district court overruled.[1] The defendant also filed a sentencing memorandum. As relevant here, he argued that "[h]is young age, lack of parental guidance, lack of proper mental health treatment and poor background certainly contributed to the commission of the offense." He provided extensive research about the role of the "developing juvenile brain" in juvenile criminal offenses. Arguing that he was "a young man with room to rehabilitate," he implored the court to impose sentences "at the lower end" of the applicable guideline ranges adumbrated in the Agreement.[2]

At the disposition hearing, defense counsel urged the court to impose an aggregate prison sentence of 117 months — a sentence which fell below the sum of the applicable guideline ranges recommended in the PSI Report. Counsel reiterated the arguments made in the sentencing memorandum, focusing on the defendant's poor upbringing, mental health problems, youth, and potential for rehabilitation. For its part, the government argued for an aggregate prison sentence of 131 months. The prosecutor

---

[1] Those objections are not pursued on appeal, and we need not discuss them in any detail.

[2] The guideline sentencing ranges (as to counts 1 and 3) delineated in the Agreement differed from that in the PSI Report. The range in the Agreement was fifty-seven to seventy-one months' imprisonment.

commented that although the defendant was young, he had "a bit of history" and that "[t]his [wa]sn't his first brush with the law."

After the defendant allocuted, the district court adopted the guideline calculations limned in the PSI Report. It then reviewed the sentencing factors listed in 18 U.S.C. § 3553(a) and discussed characteristics of the defendant and of the offenses of conviction. It stressed that on two occasions the defendant had "pointed firearms at the victims to take their vehicles by force, violence, and intimidation."

In the end, the court observed that defense counsel's sentencing recommendation fell below the sum of the applicable guideline ranges. Nor did either party's sentencing recommendation "reflect the seriousness of the offenses, . . . promote respect for the law, . . . protect the public from further crimes by" the defendant, or "address the issues of deterrence and punishment." With this in mind, the court proceeded to impose an aggregate sentence of 150-months' imprisonment — concurrent terms of seventy-eight months on counts 1 and 3, followed by a consecutive term of seventy-two months on count 2.[3] Finally, the court dismissed count 4 as called for by the Agreement. This timely appeal ensued.

---

[3] At the time of the disposition hearing, the defendant was awaiting sentence in a Puerto Rico court for selling a firearm to an undercover agent. See P.R. Laws Ann. tit. 25, § 458. When imposing sentence, the district court ordered that the sentence in

## II. ANALYSIS

"Appellate review of a criminal defendant's claims of sentencing error involves a two-step pavane." United States v. Miranda-Díaz, 942 F.3d 33, 39 (1st Cir. 2019). We first examine any claims of procedural error. See id. If the sentence is procedurally sound, we then examine any claim of substantive unreasonableness. See id.

In the case at hand, the defendant advances both types of claims. We address them separately.

### A.   The Procedural Claims.

The defendant makes four claims of procedural error. As we explain below, we find none of them persuasive.

**1.** We start with the defendant's claim that, in explicating its sentence, the district court considered factors already accounted for in the guideline range without explaining why those factors were worthy of extra weight. We give this claim short shrift: because it was raised for the first time in the defendant's reply brief, it is waived. See United States v. López, 957 F.3d 302, 309 (1st Cir. 2020) ("[I]t is settled beyond hope of contradiction that arguments not made in an appellant's opening brief are deemed abandoned.").

---

the federal case be served consecutive to any sentence to be imposed in the Puerto Rico case.

**2.** We next consider the defendant's claim that the sentencing "court committed procedural error by failing to address youth-related mitigation arguments." Because this claim was raised below, our review is for abuse of discretion. See United States v. Díaz-Lugo, 963 F.3d 145, 151 (1st Cir. 2020). We discern none.

When imposing a sentence, a district court is obliged to consider the factors outlined in 18 U.S.C. § 3553(a). In explicating its sentencing determination, though, the court "is not required to address those factors, one by one, in some sort of rote incantation." United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006); see United States v. Pupo, 995 F.3d 23, 30 (1st Cir. 2021). "[I]t is sufficient for the sentencing court simply to identify the main factors driving its determination." United States v. Sepúlveda-Hernández, 817 F.3d 30, 33 (1st Cir. 2016).

Here, the defendant does not contend that the sentencing court overlooked his youth-related argument. Nor could he: the defendant made this argument at considerable length in his sentencing memorandum and at the disposition hearing, and the government directly countered it. In addition, the court mentioned the defendant's age as a relevant sentencing factor.

Even so, the defendant complains that, when pronouncing sentence, the court failed to "address" the argument. But the court was not required to do so. See United States v. Rivera-

Morales, 961 F.3d 1, 19 (1st Cir. 2020) (noting that "a sentencing court is under no obligation [] to address every argument that a defendant advances in support of his preferred sentence"). "When a defendant has identified potentially mitigating sentencing factors and those factors are thoroughly debated at sentencing, the fact that the court 'did not explicitly mention them during the sentencing hearing suggests they were unconvincing, not ignored.'" Díaz-Lugo, 963 F.3d at 152 (quoting United States v. Lozada-Aponte, 689 F.3d 791, 793 (1st Cir. 2012)). We hold, therefore, that the sentencing court acted within the ambit of its discretion in electing not explicitly to address the defendant's youth-related argument when pronouncing sentence.

**3.** Shifting gears, the defendant posits that the sentencing court abused its discretion by "neglect[ing] to adequately consider [his] need for mental-health treatment." Inasmuch as this claim was raised below, our review is for abuse of discretion. See Díaz-Lugo, 963 F.3d at 151. Once again, we discern none.

"Appellate review of federal criminal sentences is characterized by a frank recognition of the substantial discretion vested in a sentencing court." United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013). It is the sentencing court's prerogative — indeed, its duty — to "draw upon [its] familiarity with a case, weigh the factors enumerated in [section] 3553(a),

- 8 -

and custom-tailor an appropriate sentence." Id.; see Gall v. United States, 552 U.S. 38, 49-50 (2007). And "[w]e will not disturb a sentencing court's reasoned decision to weigh some factors more heavily than others." United States v. Vélez-Andino, 12 F.4th 105, 117 (1st Cir. 2021).

To be sure, the PSI Report revealed that the defendant had received mental health treatment while held in a residential program for juvenile offenders. Moreover, defense counsel stated at sentencing (albeit in conclusory fashion) that — at the time the defendant committed the offenses of conviction — the defendant "did not have the treatment that he needed in order to cope" with his mental health. Thus, the court clearly was aware of the defendant's past mental health treatment. It also was aware that mental health care was available during incarceration, and it specifically decreed that, upon the commencement of supervised release, the defendant "shall participate in an approved mental health treatment program for evaluation and to . . . determine if treatment is necessary. If necessary, the treatment will be arranged by the probation officer in consultation with the treatment provider."

Viewing the record as a whole, the defendant's contention that the sentencing court failed to "adequately consider [his] need for mental-health treatment" cannot withstand scrutiny. The evidence regarding a specific mental health

diagnosis was sparse and, stripped of rhetorical flourishes, defense counsel's argument boils down to a contention that the court did not weigh that elusive factor as heavily as the defendant would have liked. In the circumstances of this case, the fact that the court did not attach more weight to that factor does not require vacation of the sentence it imposed. See id. (explaining that "a sentencing court's decision 'not to attach to certain . . . mitigating factors the significance that [a defendant] thinks they deserved does not make [a] sentence unreasonable'" (first and third alterations in original) (quoting United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011))).

The lesson to be learned is basic. There is no "requirement that a district court afford each of the section 3553(a) factors equal prominence. The relative weight of each factor will vary with the idiosyncratic circumstances of each case . . . ." Dixon, 449 F.3d at 205. And in this area, the sentencing court's exercise of its discretion is accorded great latitude. See United States v. Santiago-Rivera, 744 F.3d 229, 232 (1st Cir. 2014). We hold, therefore, that the sentencing court did not abuse its discretion by weighing this factor as it did.

4. We need not linger long over the defendant's final claim of error. He says that the district court failed adequately to explicate the sentences imposed. The aggregate sentence is upwardly variant, and we have explained before that an adequate

explanation for an upwardly variant sentence and the "plausible rationale" element of the test for substantive reasonableness "are almost always two sides of the same coin." United States v. Valle-Colón, 21 F.4th 44, 50 (1st Cir. 2021); see United States v. Merced-García, 24 F.4th 76, 82 n.3 (1st Cir. 2022). This is such a case. And because we find the district court's sentencing rationale plausible, see infra Part II(B), we find its explanation adequate for the same reasons.

**B.  The Substantive Reasonableness Claim.**

This brings us to the defendant's contention that his 150-month aggregate sentence is substantively unreasonable. Our review is for abuse of discretion. See Holguin-Hernandez v. United States, 140 S. Ct. 762, 766 (2020); United States v. Bruno-Campos, 978 F.3d 801, 808 (1st Cir. 2020).

We start with first principles. In sentencing, "reasonableness is a protean concept." United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). As such, "[t]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes." Clogston, 662 F.3d at 592. Our task, then, is "to determine whether the [challenged] sentence falls within this broad universe." Rivera-Morales, 961 F.3d at 21.

In mounting his claim of substantive unreasonableness, the defendant's chief complaint is that "the district court did

not properly balance the § 3553(a) factors." As we already have explained, though, the balancing of the sentencing factors is largely within the district court's discretion. See supra Part II(A)(3). And "we cannot substitute our judgment of the appropriate sentence for that of the sentencing court; to the contrary, we must accord significant deference to the court's informed determination that the section 3553(a) factors justify the sentence imposed." Rivera-Morales, 961 F.3d at 21. When all is said and done, a sentence will be deemed substantively reasonable as long as it rests on "a plausible rationale and . . . represents a defensible result." Id.

Where, as here, an aggregate sentence is the product of two or more distinct sentences, we sometimes have found it useful to analyze the substantive reasonableness of the aggregate sentence by analyzing the substantive reasonableness of each of its constituent parts. See, e.g., United States v. Padilla-Galarza, 990 F.3d 60, 91 (1st Cir. 2021). We follow that praxis here.

The aggregate sentence in this case is composed of three separate sentences (two of which are to run concurrently). Those concurrent sentences — seventy-eight months' imprisonment on counts 1 and 3 — are within the guideline ranges for those counts, and they are impervious to the defendant's attack. As we previously have pointed out, "a defendant who attempts to brand a

within-the-range sentence as unreasonable must carry a heavy burden." United States v. Pelletier, 469 F.3d 194, 204 (1st Cir. 2006).

The defendant cannot lift that "heavy burden" here. To undermine the reasonableness of a sentence that falls within the guideline range, "a defendant must 'adduce fairly powerful mitigating reasons and persuade us that the district judge was unreasonable in balancing pros and cons despite the latitude implicit in saying that a sentence must be reasonable.'" United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir. 2011) (quoting United States v. Navedo-Concepción, 450 F.3d 54, 59 (1st Cir. 2006)). No such powerful mitigating reasons are apparent here.

At sentencing, the court made pellucid that it reached its determination as to the length of these sentences after considering the PSI Report, the defendant's objections to the PSI Report, the section 3553(a) factors, the parties' arguments, and the defendant's allocution. Ultimately, the court deemed sentences within the applicable guideline ranges appropriate. It noted that the defendant had carjacked two persons at gunpoint, and in fashioning the sentences for those counts, it sought to impose sentences that reflected the seriousness of the offenses. Especially given the defendant's repetition of the offense (twice within the span of approximately one month), we cannot say that

the court's balancing of the relevant factors was unreasonable or that its rationale was implausible.

The remaining sentence — the seventy-two-month sentence on count 2 — was upwardly variant (twelve months over the guideline range). Unlike a within-the-range sentence, an upwardly variant sentence requires a "heightened" degree of explanation. Padilla-Galarza, 990 F.3d at 91. When — as in this case — "a sentencing court imposes a variant sentence, that sentence must be explained, either explicitly or by fair inference from the sentencing record." United States v. Montero-Montero, 817 F.3d 35, 38 (1st Cir. 2016).

Here, the sentencing court offered an undifferentiated explanation for its imposition of the aggregate sentence, and it did not explicitly state what factors contributed most directly to the imposition of each of the component sentences. Nevertheless, we can fairly infer from the record the factor that drove the court's decision to impose the upwardly variant sentence. When describing the offense of conviction — unlawful possession of a firearm — the court noted the defendant's inappropriate use of that firearm. It expressed concern that the defendant had "pointed firearms at the victims to take their vehicles by force, violence, and intimidation." Given the defendant's repeated use of a firearm in this dangerous manner and the court's expressed concern, we can infer that — as to the firearm-possession charge — the court gave particular weight to the brandishing of a firearm on two occasions

- 14 -

and the consequent threats to life.[4]  These aggravating factors, along with the remainder of the court's explanation for the sentences, formed a solid foundation for its sentencing rationale. Hence, we find that rationale plausible.

Finally, the aggregate sentence fell comfortably within the wide universe of reasonable sentencing outcomes.  The defendant, who had a prior weapons violation in his criminal history, carjacked two persons at gunpoint on two separate occasions.  For these crimes and for the additional crime of unlawfully possessing a firearm, the court sentenced him to an aggregate term of immurement of 150 months.  In our view, this aggregate term of immurement represents a defensible result.  Thus, the claim of substantive unreasonableness falters.

**III. CONCLUSION**

We need go no further.  For the reasons elucidated above, the judgment of the district court is


**Affirmed**.

---

[4] Although the defendant was initially charged with two counts of "brandish[ing]" a firearm, 18 U.S.C. § 924(c)(1)(A)(ii), he ultimately pleaded to a single, lesser count of "possess[ing]" a firearm, id. § 924(c)(1)(A)(i).  Even so, "[a] sentencing court may take into account relevant conduct underlying counts dismissed as part of a plea negotiation as long as that conduct was not used in constructing the defendant's guideline range." United States v. Fernández-Garay, 788 F.3d 1, 7 (1st Cir. 2015).