# United States Court of Appeals
## For the First Circuit

No. 22-1202

UNITED STATES OF AMERICA,

Appellee,

v.

ELISEO VAQUERANO CANAS, A/K/A PELIGROSO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Barron, Chief Judge,
Howard and Montecalvo, Circuit Judges.

Jessica Hedges, with whom Hedges & Tumposky, LLP was on brief,
for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with
whom Joshua S. Levy, Acting United States Attorney, was on brief,
for appellee.

August 30, 2023

**MONTECALVO, Circuit Judge**.  In this sentencing appeal, Eliseo Vaquerano Canas ("Vaquerano") appeals a 516-month sentence imposed by the district court upon his guilty plea to one count of conspiracy to conduct enterprise affairs through a pattern of racketeering activity ("RICO"), in violation of 18 U.S.C. § 1962(d).  Vaquerano asserts that the district court erred in (1) imposing a sentencing enhancement for the use or attempted use of a minor in the commission of the offense under the United States Sentencing Guidelines ("guidelines") and (2) imposing a substantively unreasonable sentence.  Because we conclude that the minor-use enhancement was properly applied in this case and that the sentence imposed was substantively reasonable, we affirm the challenged sentence.

## I. Background

Where, as here, a "sentencing appeal follows a guilty plea, 'we glean the following relevant facts from the plea agreement, the undisputed sections of the presentence investigation report, and the transcripts of the change-of-plea and sentencing hearings.'" United States v. Spinks, 63 F.4th 95, 97 (1st Cir. 2023) (cleaned up) (quoting United States v. Ubiles-Rosario, 867 F.3d 277, 280 n.2 (1st Cir. 2017)).

In October 2019, a federal grand jury returned a first superseding indictment charging Vaquerano, alongside five codefendants, with participation in a RICO conspiracy.  The

indictment alleged that Vaquerano was a "leader[], member[], or associate[] of MS-13," a Salvadoran criminal organization.[1] In furtherance of the RICO conspiracy, the indictment alleged that Vaquerano, with others, deliberately murdered Herson Rivas on July 30, 2018. In February 2021, Vaquerano pled guilty to the one-count indictment and, in so doing, admitted to murdering Rivas.

Ahead of sentencing, the Probation Office prepared the presentence investigation report ("PSR"), which stated that Vaquerano's base offense level was 43 and that he was subject to a two-level minor-use enhancement, pursuant to U.S.S.G. § 3B1.4, for using or attempting to use a minor "to commit the offense or assist in avoiding detection of, or apprehension for, the offense." Application of the minor-use enhancement resulted in an adjusted offense level of 45. That number was reduced by three levels for "acceptance of responsibility," for a total offense level of 42. See U.S.S.G. § 3E1.1(a), (b). This total offense level combined with Vaquerano's criminal history category resulted in an advisory-sentencing range of 360 months' to life imprisonment.

---

[1] The indictment alleged that MS-13, also known as La Mara Salvatrucha, is "a national and international criminal organization" and "one of the largest criminal organizations in the United States." The indictment also alleged that "[t]he leadership of MS-13 is based in El Salvador, with local leaders in the United States," and that the organization "is composed primarily of immigrants or descendants of immigrants from Central America, with members operating throughout Massachusetts."

Vaquerano objected to the minor-use enhancement. He filed a sentencing memorandum arguing for a below-guidelines sentence of 264 months' imprisonment, which was well below the 600 months' imprisonment requested by the government. Vaquerano argued a shorter sentence was warranted because he was only 18 years old when he murdered Rivas and, he maintained, "there is a growing scientific consensus" that youthful offenders are less blameworthy and more capable of rehabilitation. With his sentencing memorandum Vaquerano submitted a forensic evaluation and a psychological evaluation, both of which detailed his exposure to violence in El Salvador, his regular use of marijuana and alcohol, and his "overwhelming sense of displacement and dislocation" resulting from his move to Massachusetts from El Salvador at age 17.

For its part, the government supported its recommended 600-month sentence by describing Vaquerano as "someone who had deeply committed himself to MS-13 and the gang's quest for extreme and senseless violence." The government described how Vaquerano "had lured [Rivas] out" to the murder site and "started hacking and stabbing Rivas to death." At Vaquerano's last known address, the government discovered two large knives, believed to be two of the murder weapons, along with Vaquerano's personal effects. The knife that Vaquerano allegedly used during the murder was damaged

and was missing pieces of metal, corroborating a codefendant's account that Vaquerano repeatedly stabbed Rivas in the skull.

The district court began the sentencing hearing by considering the contested application of the minor-use enhancement. As is relevant to the present appeal, Vaquerano urged the district court to find that the Sentencing Commission exceeded its authority in promulgating the minor-use enhancement to apply to offenders under 21 years old. In support of this argument, Vaquerano relied on the Sixth Circuit's holding in United States v. Butler, 207 F.3d 839 (6th Cir. 2000), that the minor-use enhancement is inapplicable to defendants who have not reached the age of 21. Thus, he maintained, because he was 18 years old when the offense conduct occurred, the minor-use enhancement could not be applied to him.

The district court rejected this argument, finding that the Sentencing Commission did not exceed its authority in drafting the minor-use enhancement to apply to all defendants, regardless of age. The district court overruled Vaquerano's objection and then found that the minor-use enhancement applied because Vaquerano "personally recruited and trained minors" in furtherance of MS-13's activities, including recruiting a minor from his high school to join the gang, training a minor on how to patrol the streets, talking to a minor "about MS-13's mode of operating, particularly killing rivals," showing a minor a recruitment video,

and beating a minor as part of MS-13's training and teaching process.

After ruling that the minor-use enhancement would apply, the district court permitted Vaquerano to present evidence about adolescent neural development as it relates to sentencing. Vaquerano argued that "the character of a juvenile is not as well-formed as that of an adult" and, therefore, young people are "deeply mutable" and more capable of rehabilitation. He maintained that 18- to 21-year-olds "share[] many characteristics that are similar to the 16 to 17 group," and those characteristics should be considered in sentencing.

On March 17, 2022, the district court convened a sentencing hearing. The court confirmed that application of the minor-use enhancement raised Vaquerano's guidelines range to 360 months' to life imprisonment. After hearing the arguments of counsel and Vaquerano's allocution, the district court imposed a sentence of 516 months' imprisonment. The court considered the 18 U.S.C. § 3553(a) sentencing factors and concluded that Vaquerano "was an enthusiastic part of an . . . organization [] dedicated to violence" and "played a leading role in luring [Rivas] to that park in Lynn where [Vaquerano] knew [Rivas] would be killed."

The district court gave its reasoning with respect to several of the § 3553(a) factors, including the nature of the

crime: "a particularly barbaric murder." The court described how Vaquerano participated in the murder of Rivas with

> stunning brutality, with a long knife called a machete . . . that [Vaquerano] brought for that purpose, that [Vaquerano] hacked at Herson Rivas'[s] head while others were stabbing him and while he cried out to [Vaquerano] particularly . . . because he thought [Vaquerano] w[as] his special friend. [Vaquerano] should have been his protector. And afterwards, [Vaquerano] laughed about it.

The court recognized Vaquerano's history in that he "came from a difficult country and had an abusive father," but pointed out that while Vaquerano's sister went to college, he turned to MS-13 and drugs.

The district court also recognized the need "to give a sentence that affords adequate deterrence to criminal conduct," both to Vaquerano and "to other people." Finally, the court stated that the sentence imposed would "protect the public" because Vaquerano would not "be a threat to anybody in the United States for about 43 years." Throughout its reasoning, the district court "t[ook] into account the fact that [Vaquerano] committed the crime when [he] w[as] 18." The court recognized that "people who commit crimes at that age can change," and that Vaquerano had changed and was not "hopeless." This timely appeal followed.

## II. Standard of Review

"Appellate review of claims of sentencing error entails a two-step pavane." United States v. Melendez-Rosado, 57 F.4th

- 7 -

32, 37 (1st Cir. 2023) (quoting United States v. Matos-de-Jesús, 856 F.3d 174, 177 (1st Cir. 2017)). We first assess any claims of procedural error, including any claims that implicate the accuracy of the district court's guidelines sentencing range. See United States v. Ilarraza, 963 F.3d 1, 7 (1st Cir. 2020). "If the sentence is procedurally sound, we then assess any claim of substantive unreasonableness." United States v. Rijos-Rivera, 53 F.4th 704, 708 (1st Cir. 2022).

Throughout, our review is for abuse of discretion. See United States v. Díaz-Lugo, 963 F.3d 145, 151 (1st Cir. 2020). Under this standard, "we review the district court's factual findings for clear error and examine its answers to questions of law (including questions involving the 'interpretation and application of the sentencing guidelines') de novo." Id. (quoting Ilarraza, 963 F.3d at 8).

### A. Validity of Section 3B1.4

We begin with Vaquerano's claim of procedural error. This claim centers on the district court's imposition of a two-level minor-use enhancement under U.S.S.G. § 3B1.4. Specifically, Vaquerano contends that Congress intended "to enhance sentences only for defendants at least 21 years of age who use minors to commit federal offenses" and that "the Sentencing Commission exceeded its authority by . . . ignoring Congress's focus on age."

The Sentencing Commission is a non-elected body created by Congress whose purpose is to "establish sentencing policies and practices for the Federal criminal justice system." 28 U.S.C. § 991; see Mistretta v. United States, 488 U.S. 361, 368-69 (1989). The Sentencing Commission "enjoys significant discretion in formulating guidelines," Mistretta, 488 U.S. at 377, but ultimately "must bow to the specific directives of Congress," United States v. LaBonte, 520 U.S. 751, 757 (1997).

The relevant directive of Congress at issue in this case comes from the Violent Crime Control and Law Enforcement Act of 1994, which directed the Sentencing Commission to "promulgate guidelines or amend existing guidelines to provide that a defendant 21 years of age or older who has been convicted of an offense shall receive an appropriate sentence enhancement if the defendant involved a minor in the commission of the offense." Pub. L. No. 103-322, § 140008(a), 108 Stat. 1796, 2033 (1994). The resulting guideline promulgated by the Sentencing Commission calls for a two-level increase in the offense level "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense." U.S.S.G. § 3B1.4. The guideline enhancement for use of a minor is generally applicable to all defendants, and it also dropped the 21-year age restriction set forth in the Congressional directive.

Rejecting Vaquerano's contention that the Sentencing Commission exceeded its authority, we conclude that the Sentencing Commission properly invoked its general statutory powers to promulgate the minor-use enhancement without an age restriction. That is so because the Sentencing Commission submitted a statement of reasons to Congress accompanying the proposed minor-use enhancement guideline. The statement of reasons limned that "[t]his amendment implements the directive in Section 140008 of the Violent Crime Control and Law Enforcement Act of 1994 (pertaining to the use of a minor in the commission of an offense) in a slightly broader form." Amendments to the Sentencing Guidelines for the United States Courts, 60 Fed. Reg. 25074, 25086 (May 10, 1995) (emphasis added).

A specific statement that the Sentencing Commission is implementing a directive in broader form constitutes an invocation of the Commission's "broad authority to promulgate guidelines for sentences." See United States v. Dale, 374 F.3d 321, 330 (5th Cir. 2004), cert. granted, judgment vacated on other grounds, 543 U.S. 1113 (2005). This "broad authority" emanates from Congress's delegation of power to the Sentencing Commission to "promulgate and distribute . . . guidelines . . . for use of a sentencing court in determining the sentence to be imposed in a criminal case." 28 U.S.C. § 994(a)(1); LaBonte, 520 U.S. at 757 ("Congress has delegated to the [Sentencing] Commission 'significant discretion

in formulating guidelines' for sentencing convicted federal offenders." (quoting Mistretta, 488 U.S. at 377)). The guidelines that the Sentencing Commission are empowered to promulgate include those which assist a sentencing court in determining "the appropriate length of a term of . . . imprisonment." 28 U.S.C. § 994(a)(1)(B). When promulgating these guidelines, the Sentencing Commission is required to "submit to Congress amendments to the guidelines . . . accompanied by a statement of the reasons therefor." Id. § 994(p).

This statutorily mandated process is exactly what the Sentencing Commission undertook in promulgating the minor-use enhancement. The minor-use enhancement is aimed at protecting minors by enhancing, when appropriate, a defendant's term of imprisonment when they use a minor to commit the offense, see United States v. Corbett, 870 F.3d 21, 33 (1st Cir. 2017), thus falling within the Sentencing Commission's enumerated powers. See 28 U.S.C. § 994(a)(1)(B); id. § 994(c)(2) (directing the Sentencing Commission to account for "the circumstances under which the offense was committed which . . . aggravate the seriousness of the offense"). The statement of reasons submitted to Congress invoked the Sentencing Commission's authority to promulgate the guideline by specifically stating that the Sentencing Commission was implementing the Congressional directive in broader form. See United States v. Soileau, 309 F.3d 877, 880 (5th Cir. 2002) (noting

- 11 -

that the words "in a broader form" were "noticeably missing," and thus the Sentencing Commission was not exercising its general statutory authority to promulgate a guideline with broader definitions than the Congressional directive (emphasis omitted)). Accordingly, it is clear to us that the Sentencing Commission properly promulgated the minor-use enhancement without the 21-year age restriction even though its authority to do so came not from the Congressional directive, but from the Sentencing Commission's general statutory powers. See United States v. Ferrarini, 219 F.3d 145, 159-60 (2d Cir. 2000) (concluding that the Sentencing Commission's "legal authority to adopt" a guideline can come from both a Congressional directive or the Sentencing Commission's general statutory authority "to develop guidelines . . . that reflect the seriousness of the offense at issue").

Having established that the Sentencing Commission was authorized to promulgate the minor-use enhancement without an age restriction, the guideline is valid so long as it is not "'at odds' with the [C]ongressional directive." United States v. Ramsey, 237 F.3d 853, 857 (7th Cir. 2001) (citing LaBonte, 520 U.S. at 757). Indeed, broad as the Sentencing Commission's authority may be to promulgate guidelines, that discretion "must bow to the specific directives of Congress." LaBonte, 520 U.S. at 757.

Congress directed that an enhancement for involving a minor in the commission of the offense be provided to "a defendant

- 12 -

21 years of age or older." § 140008(a), 108 Stat. at 2033. We do not view this directive as a requirement that the defendant must be at least 21 years old to be subject to the enhancement, contra Butler, 207 F.3d at 849 (Jones, J., concurring and writing for the court in adopting this interpretation), but rather as a requirement that any defendant over 21 years old must be subject to the enhancement. The guideline promulgated by the Sentencing Commission accomplishes this Congressional directive because "defendants age twenty-one or older will receive a sentence enhancement if the defendant used a minor in the commission of the offense." Ramsey, 237 F.3d at 857. And, the Sentencing Commission, in its discretion, additionally provided that defendants ages 18 to 20 are subject to the enhancement. See U.S.S.G. § 3B1.4. We discern no conflict between the Congressional directive and the guideline.

Moreover, Congress's actions in response to the proposal of the guideline accord with our conclusion. The Sentencing Commission submitted its proposed amendment to Congress, and Congress had 180 days to review the proposal. See United States v. Kravchuk, 335 F.3d 1147, 1158 (10th Cir. 2003). Congress considered and rejected some of the other amendments proposed at the same time as the minor-use enhancement but did not modify or disapprove of this particular guideline. Ramsey, 237 F.3d at 858 & n.6 (pointing out that "Congress disapproved of a proposed

- 13 -

amendment that would have eliminated the 100:1 sentencing ratio that treats one who deals in a given quantity of crack cocaine the same as it treats one who deals in 100 times as much powder cocaine" (quoting Butler, 207 F.3d at 845 n.1 (Clay, J., dissenting regarding the opinion of the court that U.S.S.G. § 3B1.4 is not applicable to defendants under the age of 21))). As such, "by not taking action with respect to section 3B1.4," id. at 858, Congress did nothing to indicate that it understood that guideline to be "at odds" with its prior directive.

We thus join many of our sister circuits in holding that the minor-use enhancement is valid as applied to defendants ages 18 to 21. See, e.g., United States v. Murphy, 254 F.3d 511, 513 (4th Cir. 2001); Ramsey, 237 F.3d at 858; Kravchuk, 335 F.3d at 1158-59; United States v. Ramirez, 376 F.3d 785, 787-88 (8th Cir. 2004). We uphold the district court's application of the enhancement to Vaquerano.[2]

---

[2] We also find unavailing Vaquerano's argument that the rule of lenity requires that we overturn the application of the minor-use enhancement. The rule of lenity applies "in the context of the sentencing guidelines . . . when 'substantial ambiguity as to the guideline's meaning persists even after a court looks to its text, structure, context, and purposes.'" United States v. Pinkham, 896 F.3d 133, 138 (1st Cir. 2018) (quoting United States v. Suárez-González, 760 F.3d 96, 101 (1st Cir. 2014)). For the reasons already explained, the minor-use enhancement is valid as applied to defendants ages 18 to 21, and the rule of lenity does not apply.

## B. The Length of the Sentence

We next turn to Vaquerano's claim that the sentence imposed is substantively unreasonable. We review that claim for abuse of discretion, see Gall v. United States, 552 U.S. 38, 51 (2007), and bear in mind that "[w]hen mulling a challenge to the substantive reasonableness of a sentence, considerable deference is due to the district court's judgment," United States v. de Jesús, 831 F.3d 39, 42 (1st Cir. 2016).

Vaquerano contends that the district court fashioned the 516-month sentence without due consideration of the fact that he "was only 18 years old when he participated in the Rivas murder." Specifically, Vaquerano complains that the district court focused too much on the "gruesome nature of the Rivas murder" and did not give enough weight to "what it means for an emerging adult to engage in such conduct, as distinguished from a typical offender." In light of what Vaquerano perceives as the district court's failure "to contend meaningfully with legal and scientific developments regarding adolescent offenders," he says that the sentence is indefensible.

In the sentencing context "reasonableness is a protean concept." United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). Indeed, "[t]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes." United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011). As

- 15 -

such, "[c]hallenging a sentence as substantively unreasonable is a burdensome task in any case, and one that is even more burdensome where, as here, the challenged sentence is within a properly calculated [guidelines sentencing range]." Id. at 592-93. "A sentence is substantively reasonable if the district court provided a 'plausible sentencing rationale and reached a defensible result.'" United States v. Ouellette, 985 F.3d 107, 111 (1st Cir. 2021) (quoting United States v. Gomera-Rodríguez, 952 F.3d 15, 20 (1st Cir. 2020)).

Here, the district court provided a plausible rationale for its sentencing decision. The court appraised Vaquerano's role in the Rivas murder and the RICO conspiracy, stressing that Vaquerano "played a leading role in luring [Rivas]" to the murder site and "participated in that murder with stunning brutality." The court also thought it significant that the Rivas murder was not "an isolated aberrant act," given that Vaquerano had twice previously attempted to murder other individuals. So, too, the court attached significance to Vaquerano's participation in the conspiracy by "energetically recruit[ing] other teenagers to join the gang."

The court then extended its rationale to take account of mitigating factors. It noted Vaquerano's traumatic childhood and addiction to drugs. The court specifically "t[ook] into account the fact that [Vaquerano] committed the crime when [he was] 18,

and people who commit crimes at that age can change." The court observed that Vaquerano was not "hopeless" and had "shown evidence of changing" while in pretrial detention by "seeking to work." The court noted that this evidence persuaded it to give Vaquerano "a seven-year lower sentence" than it was initially inclined to impose.

It is clear to us that the district court's rationale is plausible. The district court expressly acknowledged Vaquerano's age, the factor that Vaquerano now attempts to persuade us the court failed to give due consideration to. Simply because the court did not weigh Vaquerano's age as he would have liked "does not undermine the plausibility of th[e sentencing] rationale." United States v. Coombs, 857 F.3d 439, 452 (1st Cir. 2017).

The length of the sentence is also defensible. The district court thoroughly considered the § 3553(a) factors and determined that, notwithstanding Vaquerano's youth, "anything less than a 43-year sentence . . . would not adequately serve" the purposes of sentencing. It is clear to us that "the sentence in this case is responsive to the nature and circumstances of the offense, the characteristics of the offender, the importance of deterrence, and the need for [just] punishment." Matos-de-Jesús, 856 F.3d at 180.

Lastly, Vaquerano entreats us to extend certain Supreme Court precedents declaring life without the possibility of parole

sentences on juvenile offenders as cruel and unusual punishment into our substantive reasonableness assessment of a sentence imposed upon a young adult offender. First, the 516-month sentence imposed upon Vaquerano was a discretionary sentence, not a mandatory one. Even in the context of homicide juvenile offenders, the Supreme Court has never held that discretionary life without parole sentences are impermissible. See Miller v. Alabama, 567 U.S. 460, 465 (2012) (holding mandatory life without parole sentences unconstitutional for all juvenile offenders); see also Graham v. Florida, 560 U.S. 48, 82 (2010) (holding life without parole sentences unconstitutional for non-homicide juvenile offenders). Beyond that, we are obligated to follow our First Circuit precedent rebuffing the notion that the Supreme Court's decision to draw the line between juvenile and adult offenders at age 18 merits extension to offenders "in the eighteen-to-twenty-age range when they committed the crimes of conviction." United States v. Gonzalez, 981 F.3d 11, 21 (1st Cir. 2020); see also United States v. Guerrero, 19 F.4th 547, 550 (1st Cir. 2021) ("[T]he 'law of the circuit' rule . . . forces us -- and the district courts under us -- to follow the holdings of earlier panel decisions regardless of how anyone might feel about them.").

More importantly, however, we continue to bear in mind that Vaquerano's challenge to his sentence is premised on its substantive reasonableness. In this context, "[t]here is rarely,

- 18 -

if ever, a single correct sentence in any specific case.  Instead, there is almost always a 'range of reasonable sentences' for any given offense."  United States v. Santiago-Rivera, 744 F.3d 229, 234 (1st Cir. 2014) (quoting Martin, 520 F.3d at 92).  As already detailed, the district court did account for Vaquerano's age and capacity for change in choosing the sentence.  We find no abuse of the district court's broad sentencing discretion in this case and conclude that the sentence imposed by the district court is substantively reasonable.

### III. Conclusion

For the foregoing reasons, we affirm Vaquerano's sentence.